PER CURIAM.
Northwest Alabama Mental Health Center, a public corporation (“Northwest”), and its executive director, Skip Newman, petition this Court for a writ of mandamus seeking the vacation of an order of the Lamar Circuit Court that required them to produce the mental-health records of Northwest patient Dimoris Johnson. We grant the petition.

I. Facts and Procedural History

In the fall of 2007, Lawrence Neil Broadhead was admitted to Bryce Hospital, a State-operated mental-health facility, for treatment of depression and drug abuse. Broadhead remained a patient of Bryce Hospital until February 19, 2008, when he was transferred to a mental-health facility operated by Northwest and known as The Hope Residential Facility. Johnson was also a patient at The Hope Residential Facility. Broadhead remained at The Hope Residential Facility from February 19, 2008, through February 29, 2008. During that time, Johnson allegedly beat Broadhead so severely that, since the alleged assault, Broadhead has remained in a semi-comatose condition.
In October 2008, Broadhead, through Sheila Yaw, his mother and next friend, sued Northwest and Newman, among others.[1] Yaw asserted that the defendants had negligently or wantonly breached certain duties allegedly owed Broadhead, including, among other things, the duty to take proper security measures to ensure Broadhead’s safety, the duty to properly supervise Johnson, and the duty to properly train, monitor, and supervise Northwest’s employees. Johnson was not named as a party to the action.
*794 During discovery, Yaw filed a request for the production of Northwest’s records pertaining to Johnson. Northwest and Newman objected to the request, asserting that the requested materials were subject to the psychotherapist-patient privilege. See Ala.Code 1975, § 34-26-2; Rule 503, Ala. R. Evid. In response, Yaw filed a motion to compel Northwest and Newman to produce the records.[2] Northwest and Newman filed a brief in support of their argument that Johnson’s records were privileged; that brief, however, is not included in the materials before us on this petition for the writ of mandamus. In response to the trial court’s request that Yaw provide it with a memorandum explaining why she believed the records at issue were discoverable, Yaw filed a “letter brief’ in which she stated:
“The only issue before this court is whether the records kept by Defendant [Northwest] while Mr. Johnson was in its custody are privileged and therefore non-discoverable. Because the Defendant has objected to the discovery of Mr. Johnson’s mental health records, it must establish that all of the records withheld from discovery are in fact privileged. See Swain v. Terry, 454 So.2d 948, 953 (Ala.1984) (‘The burden of showing the confidential character of a communication rests on the party objecting to the introduction of the evidence.’). In an attempt to meet this burden, Defendant has asserted the psychotherapist-patient privilege found under Rule 503 of the Alabama Rules of Evidence.
“Rule 503(b) of the Alabama Rules of Evidence states the general psychotherapist-patient privilege:
“ ‘A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient’s mental or emotional condition, including alcohol or drug addiction, among the patient, the patient’s psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient’s family.’
“As the leading treatise on Alabama evidence explains:
“ ‘This privilege is intended, as its underlying purpose, to: [I]nspire confidence in the patient and encourage him in making a full disclosure to the physician as to his symptoms and condition, by preventing the physician from making public information that would result in humiliation, embarrassment, or disgrace to the patient, and [is] thus designed to promote the efficacy of the physician’s advice or treatment. The exclusion of the evidence rests in the public policy and is for the general interest of the community.’
“C. Gamble, McElroy’s Alabama Evidence § 414.01(1) (5th ed.1996) (quoting Ex Parte Rudder, 507 So.2d 411, 413 (Ala.1987) (emphasis added) (citation omitted). This being true, the question as to when the privilege can be properly invoked must necessarily depend on ‘public policy’ and ‘the general interest of the community'; or rather, the public policy favoring protection of the confidential character of patient-psychotherapist communications must yield when its disclosure is essential to protect the public interest of the community.”
*795 (First emphasis in Yaw’s brief; second emphasis added.) Yaw then proceeded to make a “public policy” argument that “Mr. Johnson’s right to have his mental health records concealed” must yield to “the public interest in safety.” She also argued that the records should be discoverable because, she argued, they were “essential to a just determination of the present case” and because, according to Yaw, an insanity defense had been raised by Johnson in a collateral criminal proceeding and the raising of that defense had effected a waiver of the privilege.[3]
In September 2009, the trial court issued a protective order requiring Northwest to submit the records at issue to the court for an in camera inspection.[4] The protective order provided:
“After conducting an in camera review, the Court shall designate which portions, if any, of said records are material and relevant to the issues of this cause, and are not otherwise available to [Yaw], Only those portions of said records which are designated by the Court shall be made available to the parties.”
Northwest and Newman filed a motion requesting that the trial court reconsider its September 2009 protective order and that the court issue an order protecting the records at issue from disclosure or production.[5] The trial court denied the motion.
At some point after the entry of the September 2009 protective order, Northwest apparently submitted Johnson’s records to the trial court for an in camera review in response to the protective order. In January 2010, after reviewing the records, the trial court entered an order finding that “all records are materially relevant to the issues pending herein” and ordering that Johnson’s records be provided to Yaw for inspection and copying. The trial court further ordered that “the disclosure of these otherwise confidential materials shall be restricted to this litigation as permitted by the [September 2009] Protective Order,”
Northwest and Newman filed the present petition for a writ of mandamus in response to the trial court’s January 2010 order.

II. Standard of Review

This Court has held that it reviews by petition for a writ of mandamus a trial court’s discovery orders only “[i]n certain exceptional cases”; one of those circumstances is “when a privilege is disregarded,” or allegedly so. Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 818 (Ala.2003).
*796 “ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).... Our review is further limited to those facts that were before the trial court. Ex parte American Resources Ins. Co., 663 So.2d 932, 936 (Ala.1995).”
Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998).
The issues presented in this case concern the parameters of an evidentiary privilege and, in particular, whether the law recognizes contended-for exceptions to that privilege. Such questions are matters of law. See, e.g., Hutchinson v. Farm Family Cas. Ins. Co., 273 Conn. 33, 38, 867 A.2d 1, 4-5 (2005) (“Whether the trial court properly concluded that there is an exception to the attorney-client privilege when an insured has made an allegation of bad faith against an insurer ... and, if so, whether it properly delineated the scope_ and contours of such an exception, are questions of law.”); State v. Gianakos, 644 N.W.2d 409, 415 (Minn.2002) (“The determination whether a particular testimonial privilege or exception exists ... is a question of law which this court reviews de novo.”). Accordingly, we apply a de novo standard of review. Regions Bank v. Reed, 60 So.3d 868, 877 (Ala.2010) (explaining that when a petition presents only questions of law, this Court applies “a de novo standard”); see also Gianakos, supra.

III. Analysis

The psychotherapist-patient privilege, as adopted by the legislature, provides, in pertinent part, that “the confidential relations and communications between licensed psychologists, licensed psychiatrists, or licensed psychological technicians and their clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communication to be disclosed.” Ala.Code 1975, § 34-26-2. Rule 503, Ala. R. Evid., “Psychotherapist-Patient Privilege,” provides further explication of this privilege, providing, in pertinent part:
“(b) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient’s mental or emotional condition, including alcohol or drug addiction, among the patient, the patient’s psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient’s family.
“(c) Who May Claim the Privilege. The privilege may be claimed by the patient, the patient’s guardian or conservator, or the personal representative of a deceased patient. The person who was the psychotherapist at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the patient.
“(d) Exceptions.
“(1) Proceedings for Hospitalization. There is no privilege under this rule for communications relevant to an issue in proceedings to hospitalize the patient for mental illness, if the psychotherapist has determined, in the course of diagnosis or treatment, that the patient is in need of hospitalization.
*797 “(2) Examination by Order of Court. If the court orders an examination of the mental or emotional condition of a patient, whether a party or a witness, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the court orders otherwise.
“(3) Accused in Criminal Case. There is no privilege under this rule as to an accused in a criminal case who raises the defense of insanity.
“(4) Breach of Duty Arising Out of Psychotherapist-Patient Relationship. There is no privilege under this rule as to an issue of breach of duty by the psychotherapist to the patient or by the patient to the psychotherapist.
“(5) Child Custody Cases. There is no privilege under this rule for relevant communications offered in a child custody case in which the mental state of a party is clearly an issue and a proper resolution of the custody question requires disclosure.”
As noted, Yaw argued to the trial court that there should be a “public policy” exception to the psychotherapist-patient privilege in cases where such an exception is “essential to protect the public interest of the community,” i.e., the public interest in safety. Northwest and Newman reject this position and argue that “public policy” actually supports the application of the privilege in a case such as this.
“The strength of the public policy on which the statutory psychotherapist-patient privilege is based has been well recognized by this Court. It follows that the privilege is not easily outweighed by competing interests.” Ex parte United Serv. Stations, Inc., 628 So.2d 501, 504 (Ala.1993). The Court has explained the public policy that supports the privilege as follows:
“Statutes such as § 34-26-2 are intended to inspire confidence in the patient and encourage him in making a full disclosure to the physician as to his symptoms and condition, by preventing the physician from making public information that would result in humiliation, embarrassment, or disgrace to the patient, and are thus designed to promote the efficacy of the physician’s advice or treatment. The exclusion of the evidence rests in the public policy and is for the general interest of the community. See 81 Am.Jur.2d Witnesses § 231 at 262 (1976); Annot., 44 A.L.R.3d 24 Privilege, in Judicial or Quasi-judicial Proceedings, Arising from Relationship Between Psychiatrist or Psychologist and Patient (1972).
“ ‘[A] psychiatrist must have his patient’s confidence or he cannot help him. “The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition.... It would be too much to expect them to do so if they knew that all they say — and all that the psychiatrist learns from what they say — may be revealed to the whole world from a witness stand.” ’
“Taylor v. United States, 222 F.2d 398, 401 (D.C.Cir.1955), quoting Guttmacher and Weihofen, Psychiatry and The Law (1952), p. 272.”
Ex parte Rudder, 507 So.2d 411, 413 (Ala.1987).
As important as maintaining the psychotherapist-patient privilege is to patients and the public, this Court has recognized *798 that “this psychiatrist-patient privilege may not in all cases be an impenetrable shield.” Rudder, 507 So.2d at 417. Yaw cites one case from another jurisdiction that appears to allow an exception to the privilege for a situation involving “[a] mental patient’s threat of serious harm to an identified victim.”[6] At least one other jurisdiction allows an exception to the privilege in a situation “where the public interest in safety from violent assault is threatened.”[7] No Alabama case has been brought to our attention creating such an exception, however, and we are aware of none.
In Ex parte Pepper, 794 So.2d 340, 343 (Ala.2001), this Court declined an invitation to create “an exception to the privilege applicable when a party seeks information relevant to the issue of the proximate cause of another party’s injuries.” 794 So.2d at 343. The Court explained:
“ ‘There is no implication in the language of § 34-26-2 that the legislature intended an exception to the privilege where the issue of a party’s mental condition is raised in a civil proceeding. Given the first rule of statutory construction, that where the meaning of the plain language of the statute is clear, it must be construed according to the plain language, see, e.g., King v. National Spa & Pool Inst., 607 So.2d 1241, 1246 (Ala.1992), this Court will not create such an exception. Moreover, such an exception would conflict with the public policy underlying the psychotherapist-patient privilege noted above.’
“[Ex parte United Serv. Stations, Inc.,] 628 So.2d [501,] 504 [ (Ala.1993) ]. We do not believe that [the defendant’s] competing interest outweighs the public policy on which the psychotherapist-patient privilege is based, nor do we find any implication that the Legislature intended an exception to the psychotherapist-patient privilege to be applied where a party seeks information relevant to the issue of the proximate cause of another party’s injuries. Thus, we are unwilling to adopt such an exception.”
Pepper, 794 So.2d at 343-44.
Northwest and Newman argue that the Alabama Rules of Evidence state five exceptions to the psychotherapist-patient privilege, see Rule 503(d), and that the situation presented here falls into none of those five exceptions. In the face of those five exceptions, we decline to use our adjudicatory authority over an individual case such as this to create an additional exception in the interest of “public policy.” “‘“The term ‘public policy’ is inherently not subject to precise definition- ‘Public policy is a vague expression, and few cases can arise in which its application may not be disputed....”” ... Such creations are best left to the legislature.” *799 Hinrichs v. Tranquilaire Hosp., 352 So.2d 1130, 1131 (Ala.1977) (quoting Petermann v. International Brotherhood of Teamsters, 174 Cal.App.2d 184, 188, 344 P.2d 25, 27 (1959)). We agree that such creations are best left to the legislature, or perhaps to the normal rule-making authority of this Court. See 25 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure: Evidence § 5542 (1989) (“If there is not an applicable exception to a statutory patient’s privilege, courts have no power to create exceptions by judicial decision.”).
Yaw also argued in the trial court that Johnson’s medical records should be discoverable because, she argued, they are “the only source of relevant evidence” for her legal action and their release is “essential to a just determination of the present case.” In their petition, Northwest and Newman argue that the privilege, as articulated by the legislature and by Rule 503, Ala. R. Evid., does not contemplate such an exception.
The legislature has established parameters for the psychotherapist-patient privilege, namely, that “the confidential relations and communications between licensed psychologists, licensed psychiatrists, or licensed psychological technicians and their clients are placed upon the same basis as those provided by law between attorney and client.” Ala.Code 1975, § 34-26-2. We have been directed to no Alabama statute, rule, or precedent[8] that recognizes, or impels us to recognize in this case, an exception to the privilege that would narrow those parameters by making the privilege inapplicable when a plaintiff establishes that privileged information is “necessary” to proving a cause of action. Such an exception might be compared to the exception recognized in Rule 26(b)(3), Ala. R. Civ. P., for the discovery by one party of another party’s work-product. Obviously, however, there are differences in the policies that underlie the psychotherapist-patient privilege and the work-product privilege, and overriding the former, we think, arguably has more serious ramifications than overriding the latter. Moreover, we note with approval the special writing of Justice Lyons, joined by Justices Houston, See, and Brown, in Ex parte Etherton, 773 So.2d 431, 436 (Ala.2000) (plurality opinion):
“While work-product materials are subject to a qualified privilege, so that discovery is permitted upon a showing of substantial need and undue hardship, the attorney-client privilege is almost absolute, subject to certain narrow exceptions that have nothing to do with undue hardship and substantial need. Ex parte Great American Surplus Lines Ins. Co., 540 So.2d 1357 (Ala.1989). I am therefore unwilling to adopt a qualification of the psychotherapist-patient privilege, because § 34-26-2, Ala.Code 1975, requires that that privilege be placed on the same basis as the attorney-client privilege.”
(Lyons, J., concurring in the result); see also Wright & Graham, § 5542 (“If there is not an applicable exception to a statutory patient’s privilege, courts have no pow *800 er to create exceptions by judicial decision.”).[9]
Having concluded that none of the recognized exceptions to the privilege apply here and that this Court should not in this proceeding create a new exception to the privilege, the only remaining question is whether Johnson waived the privilege. Yaw notes that one of the recognized exceptions to the psychotherapist-patient privilege is that the privilege is waived by implication when a criminal defendant raises the defense of insanity. See Rule 503(d)(3), Ala. R. Evid. (“There is no privilege under this rule as to an accused in a criminal case who raises the defense of insanity.” (emphasis added)). Yaw contends that Johnson waived the psychotherapist-patient privilege by raising the issue of his sanity in the criminal case pending against Johnson for his alleged assault of Broadhead. Assuming without deciding that a defendant’s raising the defense of insanity in a criminal proceeding effects a waiver of the psychotherapist-patient privilege in a related, but collateral, civil proceeding, Yaw’s argument must be rejected because it does not appear that Johnson did in fact assert an insanity defense in ally criminal proceedings arising out of the alleged assault of Broadhead.
Yaw relates in her brief to this Court that the trial court stated at a hearing in this case that, in the related criminal case against Johnson, it had ruled that Johnson was incompetent to stand trial and had ordered that he be committed to Taylor Hardin Secure Mental Facility for evaluation. We note, however, that “[t]he [defendant’s] sanity at the time of the offense and his competency to stand trial are two distinct issues.” Frazier v. State, 758 So.2d 577, 584 (Ala.Crim.App.1999). We are presented here with no argument that an inquiry into the competency of a defendant to stand trial in a criminal proceeding has any bearing on the availability of the psychotherapist-patient privilege in a collateral civil proceeding. See generally Rule 11.2(b)(1), Ala. R.Crim. P. (results of mental examinations as to competency to stand trial are inadmissible in a trial for the offense charged).[10]
As noted above, although Rule 503(c) authorizes the patient and certain other persons to invoke the psychotherapist-patient privilege, “only the client may waive the privilege.” Watson v. State, 504 So.2d *801 339, 344 (Ala.Crim.App.1986). Moreover, the patient must “objectively manifest a clear intent not to rely upon the privilege” in order to waive it. Ex parte United Serv. Stations, Inc., 628 So.2d at 505. The materials before us do not support the conclusion that Johnson waived the privilege. Therefore, the trial court’s order requiring Northwest and Newman to produce Johnson’s medical records cannot be justified on this basis.[11]

IV. Conclusion

Based on the arguments and materials that were presented to the trial court and that are properly before us, we conclude that the trial court’s order requiring the production of Johnson’s medical records was entered in error. We therefore grant Northwest and Newman’s petition and order the trial court to vacate that order.
PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and WOODALL, BOLIN, and MAIN, JJ., concur.
MURDOCK, J., concurs specially.

. The complaint also asserted claims against the State Department of Mental Health and Mental Retardation, which operated Bryce Hospital; John Houston, who was the commissioner of the Department; and Charles Cutts, who was the director of Bryce Hospital when the incident involving Johnson occurred.

. Yaw also had subpoenaed similar records pertaining to Johnson from the State Department of Mental Health and Mental Retardation.

. In her letter brief, Yaw did not contend that Northwest and Newman lacked authority to assert the psychotherapist-patient privilege on behalf of Johnson or that the assertion of the privilege by Northwest and Newman was not being made on behalf of Johnson. See infra note 11.

. The order also required the submission of records pertaining to Johnson that were maintained by the State Department of Mental Health and Mental Retardation. See supra note 2.
Further, the order provided that the parties must "maintain the confidentiality of” the records, and it limited disclosure of the records to the court, the parties’ respective counsel, persons with prior legal access to the records, "court officials involved in the litigation,” and "persons designated as trial witnesses ... to the extent reasonably necessary in preparing to testify or actually giving testimony, provided such persons are directed to keep confidential the matters protected by this order.” The order also stated that any of the records that were "admitted into evidence or otherwise made a part of the record in this case shall be placed under seal and shall not be made a part of the public records of this case.”

.The State Department of Mental Health and Mental Retardation joined in the motion to reconsider.

. In Peck v. Counseling Service of Addison County, Inc., 146 Vt. 61, 67, 499 A.2d 422, 426 (1985), the Vermont Supreme Court concluded:
"A mental patient’s threat of serious harm to an identified victim is an appropriate circumstance under which the physician-patient privilege may be waived. This exception to the physician-patient privilege is similar to that recognized in the attorney-client relationship when a client informs an attorney of his or her intent to commit a crime.”

. In Schuster v. Altenberg, 144 Wis.2d 223, 249, 424 N.W.2d 159, 170 (1988), the Wisconsin Supreme Court concluded that "[t]he concern regarding the preservation of patient trust in the confidentiality of communications is legitimate, yet one which must yield in those limited circumstances where the public interest in safety from violent assault is threatened.”

. In Ex parte Western Mental Health Center, 884 So.2d 835, 843 (Ala.2003) (plurality opinion), two members of the Court concluded that the psychotherapist-patient privilege could potentially run afoul of federal and state constitutional due-process protections, but the respondents in that case had failed to submit any evidence that would support the conclusion that the denial of access to the privileged materials prevented them from defending themselves. Federal and state constitutional due-process arguments have not been presented in the case now before us.

. We recognize that, in the context of criminal prosecutions, "[a] witness’s claim of a statutory privilege may, under certain circumstances, violate a defendant’s Sixth Amendment rights of confrontation and cross-examination.” Schaefer v. State, 676 So.2d 947, 948 (Ala.Crim.App.1995). Similar concerns are not presented here.

. Yaw also attaches to her brief in this Court a copy of an order from the Montgomery Circuit Court in a case in which Johnson has been charged with possession of marijuana. The order requires Johnson to undergo an inpatient evaluation of his mental health; it states, in pertinent part, that
”[t]he Court received information that [Johnson] may lack sufficient present ability to assist in [his] defense by consulting with counsel with a reasonable degree of rational understanding of the facts and the legal proceedings; and the Court finding that reasonable grounds exist to question [Johnson's] competency; and the court having been informed by officials at Taylor Hardin Secure [Mental Facility] that [Johnson] has been committed to the custody of the Alabama Department of Mental Health by Judge James W. Moore, Lamar County, Alabama, for evaluation and/or treatment....”
(Emphasis added.) Although the order also directs the examiner to address Johnson’s mental condition at the time of the alleged offense, i.e., the marijuana possession, there is no indication in the order (1) that the offense at issue had any relation to Johnson’s alleged assault of Broadhead or (2) that Johnson asserted an insanity defense in relation to any such assault charge.

. In her brief to this Court, Yaw also argues that this Court should deny Northwest and Newman’s petition and effectively uphold the trial court’s order because, she says, (1) Northwest and Newman failed to establish that "every item contained in the medical records [was] the result of confidential communications between Johnson and a psychotherapist,” and (2) Northwest and Newman did not assert the privilege "on behalf of” Johnson. See Ala. R. Evid. 503(c) (describing those persons who may assert the privilege). It does not appear, however, that Yaw argued to the trial court either of these particular grounds. Had Northwest and Newman been made aware of these contentions, they might have presented evidence and legal arguments to address them. Instead, it appears that the matter was treated as if the records contained confidential communications and that the privilege had been properly invoked but for the public-policy exceptions to the privilege urged by Yaw. We therefore decline to consider these issues in this proceeding.