PER CURIAM.
The University of South Alabama (“USA”), a state institution of higher learning, see § 16-55-1 et seq., Ala.Code 1975, contends that it is immune from civil actions and petitions this Court for a writ of mandamus directing the Mobile Circuit Court to dismiss it from an action filed by Azin Agah, a former USA employee. Additionally, Amber Bartlett, a student who worked under Agah’s supervision in USA’s research laboratory and a defendant in the same underlying action, petitions this Court for a writ of mandamus directing the Mobile Circuit Court to issue an order quashing the subpoena issued to Alabama Psychiatric Services, P.C. (“APS”), ordering production of her mental-health records. We grant the petitions and issue the writs.

Facts and Procedural History

On or about August 1, 2006, USA hired Agah, a cell biologist, as a tenure-track employee, to teach biochemistry and to research the abnormalities in the extracellular matrix and angiogenesis associated with the pathogenesis of scleroderma. In 2010, USA did not reappoint Agah based on alleged research misconduct.
In 2011, Agah sued Bartlett and Julio F. Turrens, associate dean of the College of Allied Health Professions at USA and chairman of the two ad hoe committees that evaluated Agah, and other fictitiously named parties, alleging theft of electronic computer data and her research logbook and intentional and malicious interference with her contractual relationship with USA and seeking recovery of chattels in specie for the electronic data and her research logbook.
In June 2012, Agah served a notice of intent to subpoena APS to obtain “all records pertaining to the care and treatment of Amber Leigh Bartlett.” In July 2012, Bartlett objected to the subpoena, arguing that the records were subject to the psychotherapist-patient privilege, see Rule 508, Ala. R. Evid., and § 34-26-2, Ala. Code 1975. Bartlett and APS moved to quash the subpoena and for an order declaring that the records of APS with regard to Bartlett remain confidential. On August 9, 2012, the trial court denied the motion filed by Bartlett and APS to quash the subpoena and to enter a protective order and ordered the production of the documents for an in camera review. On August 14, 2012, Bartlett moved the trial court to reconsider its orders directing the production of her records from APS and denying a protective order.
On March 21, 2013, Agah amended her complaint adding USA and others as defendants and adding various claims. The only claim in her amended complaint that specifically names USA as a defendant “seeks a declaratory judgment, injunctive relief, and monetary damages against USA for the breach by USA of [her] tenure track employment contract with USA.”[1] Against Bartlett and the other “defendants” Agah alleged tortious interference with contractual rights, “tortious violation of [her] rights guaranteeing her substantive and procedural due process,” suppression, defamation of character, intentional *918 infliction of emotional distress, negligent infliction of emotional distress, administrative abuse of process, conversion and deti-nue, and invasion of privacy.[2] She requests a judgment of $10,000,000, an order appointing a special master to conduct a fair and impartial investigation into the allegations against her of research misconduct, and an order requiring the return of her research logbook undamaged.
On August 13, 2013, before the trial court ruled on Bartlett’s motion to reconsider, Agah issued a subpoena for Bartlett’s mental-health records from APS. On August 14, 2013, Bartlett again moved the trial court to quash the subpoena and to enter a protective order.
On August 30, 2013, USA moved to dismiss Agah’s claims against it, arguing, among other grounds, that it had absolute immunity from civil actions under § 14 of the Alabama Constitution 1901. With its motion, USA submitted evidentiary support for the trial court’s consideration.
On January 28, 2015, the trial court entered an order denying USA’s motion to dismiss and Bartlett’s motion to reconsider its order refusing to quash Agah’s subpoena for her mental-health records from APS and to enter a protective order. On February 5, 2015, USA petitioned this Court for a writ of mandamus directing the trial court to vacate its order denying its motion to dismiss and to enter an order, based on § 14 immunity, dismissing USA from Agah’s action. On March 2, 2015, Bartlett petitioned this Court for a writ of mandamus directing the trial court to quash the subpoena issued to APS seeking production of her mental-health records.

Standard of Review

“ ‘The writ of mandamus is an extraordinary legal remedy. Ex parte Mobile Fixture & Equip. Co., 630 So.2d 358, 360 (Ala.1993). Therefore, this Court will not g^ant mandamus relief unless the petitioner shows: (1) a clear legal right to the order sought; (2) an imperative duty upon the trial court to perform, accompanied by its refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the Court. See Ex parte Wood, 852 So.2d 705, 708 (Ala.2002).’
“Ex parte Davis, 930 So.2d 497, 499 (Ala.2005).”
Ex parte Troy Univ., 961 So.2d 105, 107-08 (Ala.2007).

Discussion

Case no. UkOkkO

USA contends in its petition that it is entitled to absolute immunity from the claims asserted against it in Agah’s complaint; therefore, it says, it has a clear, legal right to a writ of mandamus directing the Mobile Circuit Court to dismiss USA from Agah’s action.
“A petition for a writ of mandamus is the proper vehicle by which to seek review of the denial of a motion to dismiss based on the ground of State immunity:
“ ‘The denial of a motion to dismiss or a motion for a summary judgment generally is not reviewable by a petition for writ of mandamus, subject to certain narrow exceptions, such as the issue of immunity. Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758, 761-62 (Ala.2002).’
*919 “Ex parte Haralson, 853 So.2d 928, .931 n. 2 (Ala.2003).”
Drummond Co. v. Alabama Dep’t of Transp., 937 So.2d 56, 57 (Ala.2006).
. USA maintains that it is entitled, as a matter of law, to absolute immunity from Agah’s action under § 14, Ala. Const.1901. “[T]he State of Alabama shall never be made a defendant in any court of law or equity.” Article I, § 14, Ala. Const.1901. This Court has recognized that § 14 immunity has been extended to the “‘state’s institutions of higher learning1 and has held those institutions absolutely immune from suit as agencies of the State.” Ex parte Troy Univ., 961 So.2d at 109 (quoting Taylor v. Troy State Univ., 437 So.2d 472, 474 (Ala.1983), and citing Hutchinson v. Board ofTrs. of Univ. of Ala., 288 Ala. 20, 256 So.2d 281 (1971), and Harman v. Alabama Coll., 235 Ala. 148, 177 So. 747 (1937)).
Agah, in her answer filed in this Court, maintains that, because she seeks a declaratory judgment against USA concerning her employment contract and the rules and procedures used to investigate an allegation against her of research misconduct and because declaratory-judgment actions are excepted from § 14 immunity, USA is not entitled to immunity from her action.’ Agah’s request for a declaratory judgment against USA, however, does not disqualify USA from § 14 immunity. The declaratory-judgment exception to § 14 sovereign immunity is applicable to actions against State officials, not to actions against the State or State agencies. As we explained in Ex parte Alabama Department of Finance, 991 So.2d 1254, 1256-57 (Ala.2008): ■ ■
“[CJertain actions are not barred by § 14. 'There are six general categories of actions that do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; (4) actions brought against State officials under the Declaratory Judgments Act, Ala.Code 1975, § 6-6-220 et seq., seeking construction of a statute and its application in a given situation; (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law. See Drummond Co. v. Alabama Dep’t of Transp., 937 So.2d 56, 58 (Ala.2006) .(quoting Ex parte Carter, 395 So.2d 65, 68 (Ala.980)); Alabama Dep’t of Transp. v. Harbert Int'l, Inc., 990 So.2d 831 (Ala.2008) (holding that the exception for declaratory-judgment actions applies only to actions against State officials). As we confirmed in Harbert, these ‘exceptions’ to sovereign immunity apply only to actions brought against State officials; they do not apply to actions against the State or against State agencies. See Alabama Dep’t of Transp., 990 So.2d at 840-41.”
(Emphasis added!) Agah’s declaratory-judgment action against USA does not fall within the declaratory-judgment exception to § 14 immunity.
USA is a State institution of higher learning and, as a matter of law, is a State agency entitled to the absolute immunity of § 14. Therefore, USA has established that it has a, clear legal right to the dismissal of the claims against.it.

Case no. 11⅛0⅛.⅛1

-Bartlett contends that she has a clear, legal right to a writ of mandamus *920 directing the trial court to enter an order quashing the subpoena issued to APS seeking the production of Bartlett’s mental-health records.
“ ‘ “Discovery matters are within the trial court’s sound discretion, and' this Court will not reverse a trial court’s ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 So.2d 859, 862 (Ala.1991). Accordingly, mandamus will issue to reverse a trial court’s ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions.”
“‘Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala.2003).
“ ‘Moreover, this Court will review by mandamus only those discovery matters involving (a) the disregard of a privilege, (b) the ordered production of “patently irrelevant or duplicative documents,” (c) orders effectively eviscerating “a party’s entire action or defense,” and (d) orders denying a party the opportunity to make a record sufficient for appellate review of the discovery issue. 872 So.2d at 813-14....’
“Ex parte Meadowbrook Ins. Group, Inc., 987 So.2d 540, 547 (Ala.2007).”
Ex parte Mobile Gas Serv. Corp., 123 So.3d 499, 504 (Ala.2013).
Accordingly, we must determine whether the trial court exceeded its discretion by disregarding a privilege when it refused to quash the subpoena and to enter a protective order.
Rule 503, Ala. R. Evid., “Psychotherapist-Patient Privilege,” provides, in pertinent part:
“(b) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of the patient’s mental or emotional condition, including alcohol or drug addiction, among the patient, the patient’s psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including member’s of the patient’s family.
“(c) Who May Claim the Privilege. The privilege may be claimed by the patient, the patient’s guardian or conservator, or the personal representative of a deceased patient. The person who was the psychotherapist at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the patient.
“(d) Exceptions.
“(1) Proceedings for Hospitalization. There is no privilege under this rule for communications relevant to an issue in proceedings to hospitalize the patient for mental illness, if the psychotherapist has determined, in the course of diagnosis or treatment, that the patient is in need of hospitalization.
“(2) Examination by Order of Court. If the court orders an examination of the mental or emotional condition of a patient, whether a party or a witness, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the court orders otherwise.
“(3) Accused in Criminal Case. There is no privilege under this rule as to an *921 accused in a criminal case who raises the defense of insanity.
“(4) Breach of Duty Arising Out of Psychotherapist-Patiient Relationship. There is no privilege under this rule as to an issue of breach of duty by the psychotherapist to the patient or by the patient to the psychotherapist.
“(5) Child Custody Cases. There is no privilege under this rule for relevant communications offered in a child custody case in which the mental state of a party is clearly an issue and a proper resolution of the custody question requires disclosure.”
Rule 510, Ala. R. Evid., provides that a party may waive a privilege by voluntarily disclosing or consenting to the disclosure of the privileged matter.
In Ex parte Rudder, 507 So,2d 411 (Ala. 1987), this Court recognized that the psychotherapist-patient privilege gives the patient the right to refuse to disclose confidential communications, including notes or records made by the psychotherapist, and to prevent others from disclosing confidential communications made during the assessment and/or treatment of the patient’s mental condition. We stated that the psychotherapist-patient privilege rested on the need to
“inspire confidence in the patient and encourage him in making a full disclosure to the physician as to his symptoms and condition, by preventing the physician from making public information that would result in humiliation, embarrassment, or disgrace to the patient, and [is] thus designed to promote the efficacy of the physician’s advice or treatment. The exclusion of the evidence rests in the public policy and is for the general interest of the community.”
507 So.2d at 413. Acknowledging the public policy supporting the psychotherapist-patient privilege, this Court in Ex parte Pepper, 794 So.2d 340, 343 (Ala.2001), refused to create “an exception to the privilege applicable when a party seeks information relevant to the issue of the proximate cause of another party’s injuries.” In Ex parte Northwest Alabama Mental Health Center, 68 So.3d 792, 799 (Ala.2011), this Court refused to create “an exception to the privilege that would narrow those parameters by making the privilege inapplicable when a plaintiff establishes that privileged information is ‘necessary’ to proving a cause of action.”
Bartlett contends that the trial court exceeded its discretion in ordering the production of her APS records because, she says, those records are protected from production by the psychotherapist-patient privilege, the records do not fall within one of the recognized exceptions to the privilege, and she has not waived the privilege. In her answer to this Court, Agah appears to recognize that the requested records are subject to the psychotherapist-patient privilege. Agah does not address Bartlett’s arguments that the production of those records for in camera review is improper; instead, she argues that the production of the records for in camera review is in accordance with Ex parte Etherton, 773 So.2d 431 (Ala.2000).[3]
*922 In Ex parte Etherton, this Court addressed the petitioner’s request for a writ of mandamus directing the trial court to quash subpoenas for the production of his records relating to his treatment for chemical dependency. The petitioner maintained that the trial court exceeded the scope of its discretion in ordering the production of his records because, he said, the records were privileged under Rule 503, Ala. R. Evid., and he had not waived the privilege. This Court held that the trial court had not exceeded the scope of its discretion in ordering the production of the documents for an in camera review, p'er-mitting review of the documents to determine whether they were discoverable while protecting the petitioner from unauthorized disclosures. Justice Cook, with three Justices concurring, wrote in the main opinion that production of the documents for in camera review was proper because the records were perhaps the plaintiffs “only source of relevant evidence, 'or information that [would] lead to admissible evidence, in support of her claims.” 773 So.2d at 436. Justice Lyons, in a writing concurring in the result joined by three Justices, rejected the main opinion’s creation of an exception authorizing the trial court to disclose records upon a showing of -necessity and refused to apply that exception to the psychotherapist-patient privilege. Justice Lyons stated that production of the petitioner’s records for in camera review, however, was proper because the materials before the Court indicated that some of the records might not be confidential communications protected by the psychotherapist-patient privilege and, consequently, would be discoverable.
Agah’s reliance on Ex parte Etherton is misplaced for several reasons. First, no writing in Ex parte Etherton received a majority of the votes; therefore, the reasoning in neither the main opinion nor Justice Lyons’s special writing has prece-dential value. Moreover, even if the main opinion in Ex parte Etherton had prece-dential value, the materials' before us do not establish that Agah demonstrated a showing of necessity for the production of Bartlett’s mental-health' records for in camera review. Furthermore, the materials before us do not establish that Agah demonstrated that Bartlett’s mental-health records contained information outside the parameters of the privileged psychotherapist-patient communications that might be discoverable. Finally, this Court in Ex parte Northwest Alabama Mental Health Center, supra, specifically refused to create an exception to the psychotherapist-privilege “that would narrow those' parameters by making the privilege inapplicable when & plaintiff establishes that privileged information is ‘necessary’ to proving a cause of action.” 68 So.3d at 799. • For all these reasons, Ex parte Etherton has no application to this case.
Because Bartlett has demonstrated that her mental-health records are privileged and because Agah has not demonstrated that the records fall within an exception to the privilege, that Bartlett waived the privilege, or that the records may, contain information not protected by the privilege, Bartlett has established that the trial court exceeded the scope of its discretion in ordering the production of her mental-health records for in camera review.

Conclusion

USA and Bartlett.have established that they have a clear, legal right to the relief they have requested. USA is entitled to absolute sovereign .immunity from Agah’s *923 civil action, and we direct the trial court to enter a judgment of dismissal for USA. Bartlett is entitled to confidentiality of her mental-health records, and we direct the trial court to enter an order quashing Agah’s subpoena for Bartlett’s mental-health records from APS.-
1140440-PETITION GRANTED; WRIT ISSUED.
MOORE, C.J., and BOLIN, PARKER, MURDOCK, SHAW, MAIN, and BRYAN, JJ., concur.
STUART, J„ recuses herself.
1140441 — PETITION , GRANTED; WRIT ISSUED.
BOLIN, PARKER, MURDOCK,. SHAW, MAIN, and BRYAN, JJ., concur.
MOORE, C.J., dissents.
STUART, J., recuses herself.

. In her answer to USA's petition for a writ of mandamus, Agah states that she seeks no monetary damages from USA, that she requests only a judgment declaring that the express and implied tenure-track contractual requirements contained in the 2007 USA faculty handbook, which, she says, incorporated procedures provided in the Code of Federal Regulations when investigating alleged research misconduct, should have been applied during the investigation into her alleged research misconduct.

. To the extent that Agah’s complaint can be read as alleging these claims against USA also, as previously noted, in her answer to USA’s petition for a writ of mandamus, Agah ■ states that with regard to USA she requests only a declaratory judgment and in relief
''[a]n order appointing a special master to conduct a fair and impartial investigation as to the allegations of research misconduct [against her] pursuant to Code of Federal Regulations, C.F.R. § 93.306; and make such report of findings to the Court.”

. Agah also maintains that Bartlett’s petition for a writ of mandamus is untimely because, she says, the judgment Bartlett challenges, the denial of her motion to reconsider, was denied by operation of law, pursuant to Rule 59.1, Ala. R. Civ. P., 90 days after it was filed on August 14, 2012. She reasons that because Bartlett did not file her petition for a writ of mandamus until some two and a half years after the denial of the motion by operation of law, the petition is untimely. As this Court recognized in Ex parte Ferrari, 171 So.3d 631 (Ala.2015), because a trial court’s order granting discovery is not a final order, a motion to reconsider that order is not a post-judgment motion under Rule 59, Ala. R. Civ. *922 P„ subject to Rule 59.1. Bartiett timely filed her petition following the trial court's denial of her. motion to reconsider and for a protective order on January 28, 2015.