BOLIN, Justice.
Richard Talbott, Stephen Ballard, and Dusty Layton petition for a writ of mandamus directing the Mobile Circuit Court to vacate its January 28, 2015, order denying their motion to dismiss Azin Agah’s claims against them and to enter a dismissal in their favor.

Facts and Procedural History

Before 2010, Agah was employed at the University of South Alabama (hereinafter “USA”) as a professor engaged in scientific research. Agah’s position was a tenure-track professorship. On February 26, 2010, USA’s vice president for Health Sciences, Ronald Franks, notified Agah that she would not be reappointed to her professorship because of alleged research misconduct.
On July 28, 2011, Agah sued Amber Bartlett and Julio Turrens. Bartlett was a student of Agah’s, and she reported her concerns regarding Agah’s research to Turrens, who is a professor and associate *544 dean at USA. Agah sought compensatory and punitive damages against the defendants for the alleged theft and conversion of her computerized electronic-research data and the alleged theft and conversion of her animal-research logbook and intentional interference with a contractual property right arising out of the termination of her employment by USA. Agah also sued “R.T., W.B.D., R.F., whose names are known and unknown to the Plaintiff, but are those individuals, corporations, or other entities that played a role in the theft of the Plaintiffs electronic computer data files and animal research logbook, the defamation of the Plaintiffs character, and the intentional interference with the Plaintiffs property right of employment.” The caption of Agah’s complaint provided that the identities of R.T., W.B.D., and R.F. would be “added when ascertained.” Other than referring to the initialed parties in the caption and the description of the initialed parties above, Agah’s complaint refers only to Bartlett and Turrens as defendants from whom she is seeking relief.
In response to interrogatories propounded by Bartlett and Turrens, Agah stated that she planned to call as witnesses Richard Talbott, William Brad Davis, and Ronald Franks, among others. On December 12, 2012, Agah was deposed, and in her deposition she identified “R.T.” as Richard Talbott, “W.B.D.” as William Brad Davis, and “R.F.” as Ronald Franks. She acknowledged that these were the same individuals to whom she referred in her original complaint. Talbott, Davis, and Franks are all USA employees who were involved in the review of Agah’s alleged research misconduct.
On March 21, 2013, Agah filed an amended complaint. In the amended complaint, she identified the initialed defendants as Talbott, Davis, and Franks. For the first time, Agah named USA as a defendant, along with Stephen Ballard, Dusty Layton, and Susan LeDoux, in their individual capacities. Ballard, Layton, and LeDoux are USA employees. Agah also sued “A, B, and C, whose names are known and unknown to the Plaintiff at this time, but will be added when ascertained.”
In her amended complaint, Agah asserted claims (1) seeking a judgment declaring that USA had failed to comply with Agah’s express and implied tenure-track employment contract; (2) asserting a claim of tortious interference with contractual relations in that all the defendants had knowledge of Agah’s tenure-track employment contract and, as a proximate cause of the defendants’ interference, her contract was not renewed; (3) alleging tortious violations of her procedural and substantive due-process rights arising out of the failure of USA and the defendants who were USA employees to comply with USA’s employee handbook and certain federal regulations regarding research being conducted pursuant to a federal grant; (4) alleging suppression arising out of the alleged suppression by certain defendants’ (Franks, Talbott, Turrens, Davis, LeDoux, Layton, and Ballard) of her right to counsel and of material facts regarding compliance with federal regulations; (5) alleging defamation arising out of false information disseminated by the defendants about Agah; (6) alleging intentional infliction of emotional distress arising out of the defendants’ actions that caused her tenure-track employment contract to be terminated; (7) alleging negligent infliction of emotional distress arising out of certain of the defendants’ failure to review her work in compliance with the USA employee handbook and certain federal regulations; (8) alleging abuse of process arising out of certain of the defendants’ failure to comply with the USA employee handbook and federal regulations; (9) alleging conversion and detinue arising out of the taking of her *545 animal-research logbook from her office at USA; and (10) alleging invasion of privacy arising out of obtaining her animal-research logbook without her permission. She requested a judgment of $10,000,000, an order appointing a special master to conduct a fair and impartial investigation into the allegations against her of research misconduct, and an order requiring the return of her animal-research logbook undamaged.
USA filed a motion to dismiss Agah’s claims against it, arguing immunity from civil actions under § 14, Const, of Ala. 1901. The trial court denied the motion, and USA filed a petition for a writ of mandamus with this Court. We granted USA’s petition and ordered the trial court to dismiss USA from Agah’s action. Ex parte University of South Alabama, 183 So.3d 915 (Ala.2015). Davis, Franks, and LeDoux filed motions to dismiss, which are still pending in the trial court.
The petitioners (Talbott, Ballard, and Layton) each filed a motion to dismiss. Each argued, among other things, that, with the exception of the conversion and detinue claim, Agah’s remaining claims accrued in February 2010 when her employment was terminated, that Agah’s amended complaint did not relate back to the original complaint, and that the remaining claims asserted in the amended complaint were time-barred. They also argued that they were entitled to immunity with respect to Agah’s claims alleging tortious interference with contractual rights, tor-tious violations of her procedural and substantive due-process rights, and conversion and detinue, because, they argued, they were sued in their individual capacity and lacked the authority to grant Agah her requested injunctive relief. The petitioners attached deposition testimony and other evidence in support of their motions. On July 11, 2013, Agah filed a response to the petitioners’ motions.
Following a hearing, the trial court denied all three motions on January 28, 2015. The trial court stayed the proceedings pending mandamus review. The petitioners timely filed their petition on March 11, 2015.

Standard of Review

““‘A writ of mandamus is an extraordinary remedy, and it ‘will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ ” ’
“Ex parte Monsanto Co., 862 So.2d 595, 604 (Ala.2003) (quoting Ex parte Butts, 775 So.2d 173, 176 (Ala.2000), quoting in turn Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)). A writ of mandamus is the proper means by which to seek review of a denial of a motion to dismiss filed by a party originally listed as a fictitiously named defendant ‘when “the undisputed evidence shows that the plaintiff failed to act with due diligence in identifying the fictitiously named defendant as the party the plaintiff intended to sue.’” Ex parte Chemical Lime of Alabama, Inc., 916 So.2d 594, 596-97 (Ala.2005) (quoting Ex parte Snow, 764 So.2d 531, 537 (Ala. 1999))....”
Ex parte Nationwide Ins. Co., 991 So.2d 1287, 1289-90 (Ala.2008). Likewise, mandamus review is available where the petitioner asserts immunity. Ex parte Alabama Peace Officers’ Standards & Training Comm’n, 34 So.3d 1248 (Ala. 2009).

*546
Discussion

The first question presented is whether the trial court exceeded its discretion in denying the petitioners’ motions, in essence determining that Agah’s substitution of Talbott, Ballard, and Layton for the fictitiously named defendants in the amended complaint of March 21, 2013, relates back to the filing of the original complaint of July 28,2011. This Court has previously stated that Rule 9(h) and Rule 15(c)(4), Ala. R. Civ. P., “ ‘allow a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can later be substituted.’” Ex parte Chemical Lime of Alabama, Inc., 916 So.2d 594, 597 (Ala.2005) (quoting Fulmer v. Clark Equip. Co., 654 So.2d 45, 46 (Ala.1995)). Rule 9(h), Ala. R. Civ. P., provides:
“When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when that party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.”
Rule 15(c)(4), Ala. R. Civ. P., provides that “[a]n amendment of a pleading relates back to the date of the original pleading when ... relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h), Ala. R. Civ. P "
To avoid the bar of a statute of limitations when a plaintiff amends a complaint to identify a fictitiously named defendant in the original complaint, the plaintiff
“(1) must state a cause of action against the party named fictitiously in the body of the original complaint and (2) must be ignorant of the identity of the fictitiously named party, in the sense of having no knowledge at the time of the filing that the later-named party was in fact the party intended to be sued. Columbia Eng’g Int’l, Ltd. v. Espey, 429 So.2d 955 (Ala.1983).”
Crawford v. Sundback, 678 So.2d 1057, 1059 (Ala.1996). This Court has also stated that the original complaint must adequately describe the fictitiously named defendant and the stated claim against that defendant. Fulmer, 654 So.2d at 46.
For a plaintiff to be deemed ignorant of the identity of a fictitiously named defendant, the plaintiff must have exercised due diligence to identify the party intended to be sued:
“A plaintiff is ignorant of the identity of a fictitiously named defendant when, after exercising due diligence to ascertain the identity of the party intended to be sued, he lacks knowledge at the time of the filing of the complaint of facts indicating to him that the substituted party was the party intended to be sued. Likewise, to invoke the relation-back principle of Rule 15(c), a plaintiff, after filing suit, must proceed in a reasonably diligent manner to determine the true identity of a fictitiously named defendant and to amend his complaint accordingly.”
Ex parte FMC Corp., 599 So.2d 592, 593-94 (Ala.1992). The test for determining whether a plaintiff exercised due diligence to obtain the identity of a fictitiously named defendant is “whether the plaintiff knew, or should have known, or was on notice, that the substituted defendants were in fact the parties described fictitiously.” Davis v. Mims, 510 So.2d 227, 229 (Ala.1987).
Agah’s employment was terminated on February 26, 2010. She filed her original complaint on July 28, 2011. She listed “R.T.” as a defendant and described the party as an individual or entity “that *547 played a role in the theft of [Agah’s] electronic computer data files and animal research logbook, the defamation of [Agah’s] character, and the intentional interference with [Agah’s] property right of employment.” The substance of Agah’s original complaint is that Bartlett and Turrens converted her animal-research logbook, defamed her, and caused her to lose her employment with USA. In her deposition on December 12, 2012, Agah identified “R.T.” as Talbott. On March 21, 2013, Agah filed an amended complaint in which she substituted Talbott for “R.T.” and named Ballard and Layton as defendants.
Agah failed to adequately describe a fictitiously named defendant such that it would have related to Ballard or Layton as there were no initials that correlated to their names and no “generic” fictitious-defendant names listed in the original complaint. “A complaint stating a claim against a fictitiously named defendant must contain sufficient specificity to put that defendant on notice of the plaintiffs claim if it were to read the complaint.” Ex parte International Refining & Mfg. Co., 972 So.2d 784, 789 (Ala.2007). Agah included three very specific sets of initials in the caption of her complaint. During her deposition on December 21, 2012, Agah stated that the “R.T.” in her original complaint was Talbott. The original complaint does not set forth any claim in the body of the complaint against the initialed defendants. “Merely naming the fictitious party in the style and/or body of the complaint is insufficient; the complaint must describe the actions that form the basis of the cause of action against the fictitiously named defendant.” Ex parte International Refining, 972 So.2d at 789. This Court in International Refining held that the plaintiffs had provided specific factual assertions relating to only one claim against the fictitiously named defendants, and the Court dismissed the rest of the plaintiffs’ claims against those defendants, finding that a general statement that “[r]eferences to ‘defendants’ in this complaint will be understood to include fictitious party defendants” was inadequate to put them on notice of the claims against them. 972 So.2d at 790-91.
Agah has not shown that she was ignorant of the true identities of the parties intended to be sued in the sense of having no knowledge of the parties’ identities at the time the original complaint was filed, nor has she shown due diligence in attempting to discover the identities the fictitiously named parties or in promptly amending her complaint once she had discovered their identities. The petitioners were all employees of USA directly involved in the proceedings arising out of Agah’s alleged misconduct that eventually led to the termination of her employment. Agah even referenced Talbott’s initials in her original complaint. Agah filed her amended complaint over a year after the statute of limitations had run on all but one of her claims and 19 months after her original complaint was filed.
“The purpose of [Rule 9(h)] is, in effect, to counteract the relatively short statute of limitations for tort, negligence, and wrongful death claims in this State. The rule applies when a plaintiff knows he has been injured by someone and the plaintiff can describe that person or entity (i.e., ‘the manufacturer of the valves that injured the plaintiff), but the plaintiff is ignorant of the specific name of the person or entity. It is an emergency action that allows the plaintiff to hold a spot for the unidentified party with a fictitious name. The only additional requirement is that the plaintiff state the cause of action against the fictitiously named defendants within the body of the complaint. Columbia Eng’g *548 Int'l Ltd. v. Espey, 429 So.2d 955, 958-59 (Ala.1983). If the plaintiff diligently pursues the identity and substitutes the name of the fictitiously named defendant, see Rule 9(h) and Bowen [v. Cummings, 517 So.2d 617 (Ala.1987) ], then the plaintiff can substitute the newly discovered name for the fictitiously named defendant. Because the fictitious name serves as a placeholder for the party, [Ala.] R. Civ. P. 15(c) allows the substituted name to relate back to the date of the original complaint. In that way, the plaintiff effectively tolls the statute of limitations.”
Toomey v. Foxboro Co., 528 So.2d 302, 307 (Ala.1988)(Adams, J., dissenting).
In Ex parte Ismail, 78 So.3d 399 (Ala. 2011), the plaintiff was allegedly injured while a patient at Highlands Medical Center. The patient had knowledge, based on medical records in his possession before filing the complaint, that Dr. Younus Ismail had been one of two treating physicians. 78 So.3d at 407. Nevertheless, the patient did not attempt to substitute Dr. Ismail for a fictitiously named party until more than two years after the limitations period on his cause of action had expired. 78 So.3d at 403. Thus, the issue in that case was not one of identity but, rather, the extent of the involvement of the physician, whose identity was known, with the patient. Essentially, in other words, the plaintiff was improperly, 78 So.3d at 408, attempting to use Rule 9(h) to gain “additional time beyond the statutorily prescribed period within which to formulate causes of action.” Columbia Eng’g Int’l, Ltd. v. Espey, 429 So.2d 955, 959 (Ala. 1983).
In Crawford v. Sundback, supra, the plaintiffs were employed at a chemical plant; they sued following an explosion of a tank at the chemical facility. The plaintiffs named fictitious defendants. They later sought to amend their complaint to substitute coworkers at the facility as defendants. The coworkers filed summary-judgment motions seeking dismissal from the action. This Court held that the plaintiffs were not ignorant of the identity of the coworkers as defendants and, thus, that the subsequent amendment adding the coworkers did not relate back to date of original complaint for statute-of-limitations purposes.
“In support of their motions for summary judgment, the defendants gave affidavits stating that before the accident they had known the four workers as co-employees and that the four workers had known them as co-employees, in some instances for many years. The defendants asserted that the plaintiffs could have found them by routine discovery, for example, by asking in interrogatories to the co-employee defendants originally named in the plaintiffs’ complaints the true identities of the parties named fictitiously. Attached to the motions for summary judgment were copies of petitions to obtain and perpetuate evidence, filed in December 1989 by the plaintiffs pursuant to Rule 27, Ala. R.Civ.P., and an affidavit by an attorney for some of the defendants, who stated that on February 7,1990, he attended an inspection of the 3M plant pursuant to those petitions. Thus, the defendants showed that the plaintiffs had begun discovery shortly after the fatal incident.
“The plaintiffs argue that they were diligent and that the defendants’ allegations were insufficient to shift the burden to them to produce substantial evidence of their diligence. However, we conclude that the defendants’ motions were sufficient to shift the burden. The motion asserted the statute of limitations as a defense; this motion appeared on its face to have merit, because some *549 of the substitutions of these defendants were made almost two years after the date when the statutory period of limitations ordinarily would have run, and some substitutions were made more than two years after that date. Moreover, the motions went further, asserting that the plaintiffs knew when they filed their complaints, or with due diligence could have discovered by that time, that these defendants were the parties named fictitiously in the complaints. These assertions were supported by affidavits of the defendants, three of whom stated that before the accident Rains [one of the plaintiffs] had known them and had known their responsibilities. The defendants argued that simple discovery, such as interrogatories to the co-employee defendants who were named in the original complaints, would have disclosed their identities. They established that the plaintiffs began conducting discovery within six months after the incident, but claimed not to have learned of these defendants’ alleged culpability until almost four years after the incident, or later.
“In response, the plaintiffs made no showing as to why Rains’s familiarity with three of the defendants did not lead to earlier substitution at least as to those three, or as to how the alleged failure to discover earlier these defendants’ alleged culpability occurred in spite of due diligence. The plaintiffs simply presented a conclusory affidavit of one of their attorneys, stating that these defendants’ culpability had only recently come to light in depositions, and stating: ‘At all times during my involvement with these cases, I exercised due diligence to discover any and all parties legally responsible for the injuries and deaths suffered in the explosion.’ This was not sufficient to present substantial evidence in response to the defendants’ showings.”
678 So.2d at 1060-61.
In the present case, Agah’s claims against the petitioners in her amended complaint, with the exclusion of the conversion and detinue claim, are barred by the applicable two-year statute of limitations. The claims asserted in the amended complaint do not relate back to the original complaint under Rule 9(h) and Rule 15(c)(4), Ala. R. Civ. P.
We now turn to Agah’s conversion and detinue claim. The statute of limitations for “detention or conversion of personal property” is six years. § 6-2-34(3), Ala.Code 1975. To establish conversion, a plaintiff must show a wrongful taking or a wrongful detention or interference or an illegal use or misuse of his or her property. Ex parte Anderson, 867 So.2d 1125 (Ala.2003). “To be entitled to the right of recovery for conversion, plaintiff must have general or special title to the property in question, and the possession or immediate right of possession; and the party complained against must have wrongfully exerted some act of dominion over such property inconsistent with and destructive of the title of the party plaintiff.” Hamilton v. Hamilton, 255 Ala. 284, 289, 51 So.2d 13, 18 (1951). “[T]he very gist of detinue is the wrongful detention by the defendant of the plaintiffs personal property.” Ray v. Blackwell, 521 So.2d 44, 45 (Ala.Civ.App.1988).
The petitioners argue that they are immune from suit based on § 14. In reviewing the grant or denial of a motion to dismiss, the question “ ‘is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief.’ ” Ex parte Alabama Dep’t *550 of Youth Servs., 880 So.2d 393, 398 (Ala. 2003) (quoting Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993)). In the present case, the trial court had before it, in addition to the pleadings, deposition testimony and other documents. Ex parte Jefferson Cnty. Dep’t of Human Res., 63 So.3d 621 (Ala.2010) (treating a motion to dismiss based on immunity as a summary-judgment motion where the trial court had before it and considered matters outside the pleadings).
Article 1, § 14, of the Alabama Constitution, provides that “the State of Alabama shall never be made a defendant in any court of law or equity.” This Court has recognized:
“ ‘The wall of immunity erected by § 14 is nearly impregnable,’ Patterson [v. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002),] and bars
“(1) claims against the State,
“(2) claims against a State agency,
“(3) claims against a state official or employee sued in his official capacity as an agent for the State, and
“(4) claims against a state official or employee sued in his individual capacity.”
Ex parte Davis, 930 So.2d 497, 500 (Ala. 2005) (footnotes omitted). “The State’s immunity bars suits for relief by way of mandamus or injunction, no less than suits for any other remedy.” Taylor v. Troy State Univ., 437 So.2d 472, 474 (Ala.1983).
The fourth category of claims set out in the statement above from Davis refers to claims against State officials or employees sued in their individual capacities that are, in effect, claims against the State. Davis, 930 So.2d at 500 (“Whether immunity serves as a defense to an action against a state officer or employee sued in his individual capacity depends upon the degree to which the action involves a State interest.”); Phillips v. Thomas, 555 So.2d 81, 83 (Ala.1989) (“State officers and employees, in their official capacities and individually, also are absolutely immune from suit when the action is, in effect, one against the State.”). “This form of immunity is distinct from the discretionary or State-agent immunity discussed in Ex parte Cranman, 792 So.2d 392 (Ala.2000), which dealt with claims against State agents sued in their personal, or individual, capacities, which were not, in effect, claims against the State.” Ex parte Troy Univ., 961 So.2d 105, 108 (Ala.2006). State employees sued in their individual capacities, however, enjoy only State-agent immunity from suit. Ex parte Tuscaloosa Cnty., 796 So.2d 1100, 1106 (Ala.2000). The law of State-agent immunity was succinctly restated in Ex parte Cranman, supra, and that restatement was adopted by a majority of this Court in Ex parte Butts, 775 So.2d 173 (Ala.2000).
Here, Agah’s conversion and deti-nue claims involving the animal-research logbook seek an order returning the logbook and monetary damages for the time the logbook was out of her possession when she needed it for her defense. The petitioners were sued only in their individual capacities. However, part of Agah’s relief is in the form of return of the property. In Ex parte Moulton, 116 So.3d 1119, 1142 (Ala.2013), this Court held that, to the extent the plaintiff sought relief in the form of reinstatement to an employment position from the defendants in their individual capacities, “that claim is meaningless because the [defendants] can act on behalf of [the state university] only in their official capacities and are without the necessary authority to provide the requested relief in their individual capacities.” Here, Agah’s amended complaint refers only to Bartlett, Amy Boyd (a witness), and Tur-rens with regard to the alleged conversion *551 of the animal-research logbook, none of whom are before us in this petition. Moreover, Agah’s complaint alleges that the logbook was her “personal and intellectual property,” but in her subsequent deposition Agah stated that the logbook belonged to USA and that she was merely the custodian. A plaintiffs sworn deposition testimony overrides unsworn allegations in a complaint. See Osborn v. Johns, 468 So.2d 103 (Ala.1985)(holding that in a fraud action by a vendor against a bank, the vendor’s deposition testimony that he had no basis for a claim against the bank showed an absence of any genuine issue of material fact and entitled the bank to judgment as a matter of law, where the vendor “essentially relied on his initial pleadings” to oppose summary judgment). Because Agah did not sue the petitioners in their official capacities, they could not provide her with the relief requested, i.e., the return of the animal-research logbook “taken” by USA students or employees, who were persons other than the petitioners. Additionally, Agah is seeking monetary relief from the petitioners arising out of the taking of the logbook. The allegations in Agah’s amended complaint concern the removal of the logbook from Agah’s “custody” by certain USA students or employees, not the petitioners. Also, any claims brought against the petitioners in their individual capacities seeking money damages are barred by State immunity under § 14 where the claim is in effect one against the State. Ex parte Moulton, supra.

Conclusion

Based on the foregoing, the petitioners have a clear legal right to the dismissal of Agah’s amended complaint against them. Agah’s amended complaint did not relate back to her original complaint; thus, all of her claims against the petitioners, with the exclusion of her conversion and detinue claim, were barred by the statute of limitations. Agah’s conversion and detinue claim against the petitioners in their individual capacities seeks relief that the petitioners could not provide. Therefore, we grant the petition for a writ of mandamus and- direct the trial court to vacate its order denying the petitioners’ motion seeking dismissal of the claims against them.
PETITION GRANTED; WRIT ISSUED.
SHAW, MAIN, WISE, and BRYAN, JJ., concur.
PARKER and MURDOCK, JJ., concur in the result.
MOORE, C.J., dissents.
STUART, J., recuses herself.