The Rosa and Raymond Parks Institute for Self Development, in its own right and as the successor to the Rosa Parks Legacy, sued Troy University[1] and fictitiously named defendants on September 26, 2005, asserting claims of breach of contract and tortious interference with contractual rights. The complaint alleged that the University was acting in violation of a memorandum agreement entered into on January 15, 1998, between the Rosa Parks Legacy and the University, doing business as Troy State University of Montgomery, *Page 107 
which related to the University's use of Rosa Parks's name and image and to its operation on its Montgomery campus of the Rosa Parks Library and Museum ("the museum").
The complaint sought compensatory and punitive damages and a restraining order prohibiting the University from using Rosa Parks's name or image and from making a movie for use in the museum that was to feature Rosa Parks's image and a facsimile of her voice. On September 29, 2005, the circuit court denied the Institute's request for a restraining order. On October 28, 2005, the University moved to dismiss the complaint, arguing, in part, that it was immune from suit under Art. I, § 14, of the Alabama Constitution of 1901.
The Institute amended its complaint in November 2005 to add as plaintiffs the estate of Rosa Parks and the Rosa Parks Living Trust (all the plaintiffs are hereinafter referred to collectively as "the Institute"); to correct its designation of the University (see note 1); to assert additional counts of theft of intellectual property and fraudulent inducement to contract; to seek an injunction prohibiting the University from engaging in various activities related to its use of Rosa Parks's name and image; and to substitute Glenda Curry, former vice chancellor of the University, and Cameron J. Martindale, current vice chancellor of the University, for two of the fictitiously named defendants. The original complaint did not describe the fictitiously named defendants other than as "Fictitious A, B, and C, as yet unknown individuals, corporations, or entities." The amended complaint did not specify whether Martindale was being sued in her personal or official capacity; it stated simply that the Institute was amending its complaint "to rename Fictitious Party C, Cameron Martindale, current president of Troy State University Montgomery and Vice Chancellor of Troy State."[2] The following statement in the count alleging fraudulent inducement is the only specific reference in the amended complaint to Martindale: "Troy State's current Vice Chancellor ratified the Memorandum by treating the Institute as the successor [to the Rosa Parks Legacy] after receiving notice from the Institute in 2001." (Amended complaint at ¶ 48.)
The University and Martindale filed motions to dismiss the claims asserted against them in the amended complaint, asserting immunity as a ground for dismissal. On May 12, 2006, and August 4, 2006, the circuit court entered orders denying the motions.[3] The University and Martindale jointly filed a petition for the writ of mandamus asking this Court to direct the circuit court to vacate its order and to dismiss the Institute's claims against them on the basis of immunity.
 "The writ of mandamus is an extraordinary legal remedy. Ex parte Mobile Fixture Equip. Co., 630 So.2d 358, 360 (Ala. 1993). Therefore, this Court will not grant mandamus relief unless the petitioner shows: (1) a clear legal right to the order sought; (2) an imperative duty upon the trial court to perform, accompanied *Page 108 
by its refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the Court. See Ex parte Wood, 852 So.2d 705, 708 (Ala. 2002)."
Ex parte Davis, 930 So.2d 497, 499 (Ala. 2005). A "petition for a writ of mandamus is an appropriate means for seeking review of an order denying a claim of immunity." Exparte Butts, 775 So.2d 173, 176 (Ala. 2000).
"In reviewing the denial of a motion to dismiss by means of a mandamus petition, we do not change our standard of review."Ex parte Haralson, 853 So.2d 928, 931 (Ala. 2003).
"In Nance v. Matthews, 622 So.2d 297 (Ala. 1993), this Court stated the standard of review applicable to a ruling on a motion to dismiss:
 "`On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [it] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [it] may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'
 "622 So.2d at 299 (citations omitted)."
Knox v. Western World Ins. Co., 893 So.2d 321, 322
(Ala. 2004).
Article 1, § 14, of the Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." This Court has recognized that
 "`[t]he wall of immunity erected by § 14 is nearly impregnable,' and bars
 "(1) claims against the State,
 "(2) claims against a State agency,
 "(3) claims against a state official or employee sued in his official capacity as an agent for the State, and
 "(4) claims against a state official or employee sued in his individual capacity."
Ex parte Davis, 930 So.2d at 500 (quoting Pattersonv. Gladwin Corp., 835 So.2d 137, 142-43 (Ala. 2002) (footnotes omitted)). "The State's immunity bars suits for relief by way of mandamus or injunction, no less than suits for any other remedy."Taylor v. Troy State Univ., 437 So.2d 472, 474
(Ala. 1983).
The fourth category of claims identified in the above statement from Davis refers to claims against State officials or employees in their individual capacity which are, in effect, claims against the State. Ex parte Walley,950 So.2d 1172, 1178-79 (Ala. 2006); Davis, 930 So.2d at 500
("Whether immunity serves as a defense to an action against a state officer or employee sued in his individual capacity depends upon the degree to which the action involves a State interest."); Phillips v. Thomas, 555 So.2d 81, 83
(Ala. 1989) ("State officers and employees, in their official capacities and individually, also are absolutely immune from suit when the action is, in effect, one against the State."). This form of immunity is distinct from the discretionary or State-agent immunity discussed in Ex parte Cranman,792 So.2d 392 (Ala. 2000), which dealt with claims against State agents sued in their personal, or individual, capacities, which were not, in effect, claims against the State. *Page 109 
I. The University
The University argues that it is absolutely immune from suit and that the circuit court thus should have dismissed the Institute's claims against it. This Court has extended the restriction on suits against the State found in § 14 "to the state's institutions of higher learning" and has held those institutions absolutely immune from suit as agencies of the State. Taylor, 437 So.2d at 474 (citing Hutchinsonv. Board of Trs. of Univ. of Ala., 288 Ala. 20,256 So.2d 281 (1971), and Barman v. Alabama Coll., 235 Ala. 148,177 So. 747 (1937)). See also Stark v. Troy StateUniv., 514 So.2d 46, 50 (Ala. 1987) (finding Troy State University constitutionally immune from suit); Matthews v.Alabama. Agric. Mech. Univ., 787 So.2d 691, 696
(Ala. 2000)("Alabama A M University is an instrumentality of the State of Alabama and, thus, is absolutely immune from suit under § 14"); Ex parte Craft, 121 So.2d 55, 58 (Ala. 1999)("Ayers State Technical College is a state institution of higher learning and is entitled to absolute immunity. . . ."). The University is an institution of higher learning under the authority of the governor and the superintendent of education. See Ala. Code 1975, § 16-56-1; Taylor, supra;Stark, 514 So.2d at 50 ("Here, because Troy State University is constitutionally immune from suit, its motion to dismiss was properly granted."). Under these precedents, the University was entitled to dismissal of the Institute's claims against it by virtue of § 14.
The Institute argues that the University is not protected by the prohibition of suits against the State in § 14 because, according to the Institute, the University has received funds for the operation of the museum in the form of grants from the United States government, museum ticket and other sales, and private donations. The Institute reasons that because the University is not wholly funded by the State with respect to the museum and related projects, any judgment against the University may be paid out of non-State funds and thus not affect the State treasury so as to bring the University within the prohibition of § 14. At the foundation of this argument is the erroneous proposition that this Court's extension of the prohibition of § 14 to State agencies is based solely on the effect actions against such agencies have on the State treasury. The Institute cites no authority to support its argument, and we have found no prior decision of this Court denying the application of § 14 to a State agency solely because the agency receives some of its funds from a source other than the State.
The receipt of funds from the State is a significant factor in deciding whether an entity is a State agency. Likewise, the fact that a judgment "would result in a monetary loss to the State treasury," Ex parte Alabama Dep't of Mental Health Mental Retardation, 937 So.2d 1018, 1023 (Ala. 2006), is significant, if not determinative, in the decision. However, neither factor is the sole basis for our extension of § 14 to State agencies. See, e.g., Ex parte GreaterMobile-Washington County Mental Health-Mental Retardation Bd.,Inc., 940 So.2d 990, 993 (Ala. 2006); TallaseehatchieCreek Watershed Conservancy Dist. v. Allred, 620 So.2d 628,630 (Ala. 1993); Armory Comm'n of Alabama v. Staudt,388 So.2d 991, 992-93 (Ala. 1980); White v. Alabama InsaneHosp., 138 Ala. 479, 482, 35 So. 454, 454 (Ala. 1903). This Court considers several factors in determining whether an entity is "an immediate and strictly governmental agenc[y]" and thus entitled to protection from suit under § 14, including factors related to "(1) the character of the power delegated to the body; (2) the relation of the body to the State; and (3) the nature *Page 110 
of the function performed by the body." Rodgers v.Hopper, 768 So.2d 963, 966 (Ala. 2000) (citingStaudt, 388 So.2d at 993). The Institute's argument, as presented to this Court, therefore, provides no well-founded basis upon which the University should be denied the protection afforded by § 14.
Because the University is a State institution of higher learning and entitled to the absolute immunity of § 14, the Institute can prove no set of circumstances that would entitle it to relief. Therefore, the University has a clear legal right to dismissal of the claims against it.
II. Martindale
We turn now to the determination of whether the Institute's claims against Martindale should have been dismissed on grounds of immunity. Initially, we note that Martindale does not argue that she is a constitutional State officer absolutely immune from suit. See Ex parte Davis, 930 So.2d at 500. Likewise, although this Court has held that "State agents enjoy absolute immunity from suit in their official capacities,"Burgoon v. Alabama State Dep't of Human Res.,835 So.2d 131, 133 (Ala. 2002), Martindale does not specifically argue that she is absolutely immune from suit in this capacity. Rather, she argues that she enjoys qualified or State-agent immunity from suits asserted against her in her individual capacity, as discussed in Ex parte Cranman, supra.
The Institute's complaint contained no description of the fictitiously named party for whom the Institute substituted Martindale and did not specify whether the action was brought against the fictitiously named party in a personal or an official capacity. The amended complaint similarly made no such specification regarding Martindale. The only allegation of the amended complaint specifically relating to Martindale is that Martindale "ratified the Memorandum by treating the Institute as the successor [to the Rosa Parks Legacy] after receiving notice from the Institute in 2001." From this allegation alone, we cannot say that the action is against Martindale personally, rather than in her official capacity as vice chancellor of the University. Indeed, the allegation states that Martindale ratified an agreement of the University and presumably on its behalf so as to bind the University. Furthermore, the Institute has not argued that its claims are against Martindale in her individual capacity, and Martindale has asserted that the Institute sued her in her official capacity. Accordingly, the nature of the claims against Martindale and the course of proceedings show that the Institute has sued Martindale in her official capacity. See, e.g., Jackson v. Georgia Dep't ofTransp., 16 F.3d 1573, 1575 (11th Cir.1994) ("When it is not clear in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed.") (citing Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985));Gamble v. Florida Dep't of Health RehabilitativeServs., 779 F.2d 1509, 1513 (11th Cir.1986)("Whether a state officer is being sued for damages in an official or an individual capacity is not mere semantics; the question is whether the plaintiff is reasonably seeking relief from the state coffers or from the individual's assets." (footnotes omitted)).
Because the Institute sued Martindale in her official capacity, Martindale is entitled to the dismissal of the claims against her. This Court has held that a suit "against State agents in their official capacities is a suit against the State."Burgoon, 835 So.2d at 133. Accordingly, because the claims asserted against Martindale in her *Page 111 
official capacity are claims against the State, they are barred by the prohibition of suits against the State in § 14.
Furthermore, even if we were to find that the Institute sued Martindale personally and that the claim was not, in effect, a claim against the State, the rule of State-agent immunity set forth in Cranman would apply: "A State agentshall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising his or her judgment in the administration of a department or agency of government [by, among other things,] negotiating contracts. . . ." Cranman, 792 So.2d at 405. Because Martindale is alleged only to have ratified a memorandum agreement between the Institute's predecessor and the University, and thus to have negotiated a contract in the course of exercising her judgment as vice chancellor, she is immune from civil liability to the Institute. The amended complaint makes no specific allegation that Martindale acted "willfully, maliciously, fraudulently, in bad faith, beyond . . . her authority, or under a mistaken interpretation of the law" or in any other way that would remove her from immunity underCranman. Cranman, 792 So.2d at 405. Therefore, even if the amended complaint stated claims against Martindale in her personal capacity, she would be entitled to State-agent immunity under Cranman.
Based on the foregoing, the Institute can prove no set of circumstances that would entitle it to relief, and Martindale is entitled to a dismissal of the Institute's claims against her. Martindale thus has a clear legal right to dismissal of the claims against her.
We accordingly grant the University and Martindale's petition and issue a writ of mandamus directing the circuit court to vacate its order and to dismiss all claims asserted against the University and Martindale.
PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and SEE, LYONS, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
[1] The plaintiff originally named "Troy State University of Montgomery" as a defendant but later amended the complaint to change the designation to name Troy University as the defendant.
[2] This opinion addresses only the mandamus petition filed by Martindale and the University; it does not review any petition, motion, or defense related to Curry.
[3] The May 12, 2006, order neglected to address Martindale's motion to dismiss. After the University and Martindale filed their petition for the writ of mandamus in June 2006, the circuit court entered the August 4, 2006, order, which amended its previous order to correct the omission. The parties have supplemented the record to include this later amendment, and we treat the petition as having been timely filed and as properly addressing the denial of both the University's and Martindale's motions to dismiss.