[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 893 
On January 9, 2008, this Court granted the petition for a writ of certiorari filed by the Alabama Department of Human Resources ("DHR") to review the Court of Civil Appeals' holding that the sovereign-immunity provision of the Alabama Constitution of 1901 did not bar the motion filed by Ideal Truck Service, Inc., seeking to compel the Alabama Child Support Payment Center ("the payment center"), which is operated by DHR, to take certain actions to correct an error in disbursing child-support moneys withheld from — the paycheck of an employee of Ideal Truck Service. AlabamaDep't of Human Res. v. Ideal Truck Serv., Inc.,999 So.2d 888 (Ala.Civ.App. 2007). Because we conclude that the trial court lacked subject-matter jurisdiction, we vacate the trial court's order and dismiss the appeal.
 Facts
On August 10, 2000, Laurie L. Miller ("the mother") filed a complaint for divorce from William J. Miller ("the father") in the Circuit Court of Mobile County, case no. DR-00-501918. Two children had been born of their marriage; one was six years old and the other four years old at the time the complaint was filed. On January 19, 2001, the trial court issued a judgment of divorce, awarding the mother custody of the children, allowing the father to visit the children, and requiring the father to provide a certain sum of money monthly for the support of the children. On February 8, 2001, the trial court issued an income-withholding order for payment of child support; that order was subsequently amended.
Pursuant to the income-withholding order, the father's employer would regularly withhold the amount of child support so ordered from his paycheck and remit that amount to the payment center. The payment center, in turn, normally deposited the child-support money withheld from the father's paycheck into an account held by the mother. Through a contract with DHR, Tier Technologies, Inc., operates the payment center.
During the years following the divorce, the father changed jobs and employers several times and was unemployed at times. At some point, the father was employed by Ideal Truck Service. On March 22, 2005, Ideal Truck Service was served with a copy of an income-withholding order regarding the father. Pursuant to the income-withholding order, Ideal Truck Service began withholding income from the father's paycheck and remitting the withheld funds to the payment center. On November, 18, 2005, Ideal Truck Service submitted a check to the payment center in the amount of $837.72. On November 29, 2005, Ideal Truck Service submitted a second check to the payment center in the amount of $139.62. These two checks represented funds withheld from the father's paycheck pursuant to his court-ordered support obligations to his children. However, Ideal Truck Service mistakenly wrote on those two checks the case number for the divorce action of a former Ideal Truck Service employee, whose child-support payments had previously been processed by the payment center. The payment center deposited the funds from the two misidentified checks into the account of the former employee's ex-wife. As a result, the father's account showed that he was behind in his child-support payments in the amount of $977.34 (the combined value of the misidentified checks) and his account accrued interest based on that "delinquency." *Page 894 
On December 13, 2005, Ideal Truck Service filed an "Instanter Third Party Motion to Correct Accounting" in the divorce action between the mother and the father. In its motion, Ideal Truck Service asked the trial court to order the payment center to credit the proper child-support account with the money withheld from the father's paycheck and remitted to the payment center by the incorrectly identified checks. Ideal Truck Service further requested that the trial court order the payment center to remove any interest the father had incurred on his child-support obligations as a result of the error in crediting the wrong person with the payment and placing the money in the wrong person's account. In its motion, Ideal Truck Service did not ask the trial court to issue any order to a DHR official or to Tier Technologies. The certificate of service on Ideal Truck Service's motion reflects that Ideal Truck Service served the motion on the mother, the father, and the "Alabama Child Support Payment Center."
On December 15, 2005, the trial court issued the following order:
 "UPON CONSIDERATION of the Instanter Motion to Correct Accounting filed by Ideal Truck Service, Inc., employer of the Defendant, [the father], and the Affidavit in Support of the Instanter Motion to Correct Accounting, it is hereby
 "ORDERED AND ADJUDGED BY THE COURT AS FOLLOWS:
 "1. The Alabama Child Support Payment Center shall recover immediately the funds in the amount of [n]ine hundred seventy-seven and 34/100 Dollars ($977.34) erroneously paid to the recipient [K.J.C.] (Case number DR 1999____) and said funds shall be paid back to Ideal Truck Service, Inc. at 60 White Avenue, Fairhope, Alabama 36532.
 "2. Ideal Truck Service, Inc. is hereby ordered to pay the sum of [n]ine hundred seventy-seven and 34/100 Dollars ($977.34) which it withheld from the Defendant's wages to [the mother]'s account in the above referenced case."
(Capitalization in original.)
Subsequently, Ideal Truck Service paid $977.34 to the payment center to be credited to the mother's account, but the payment center did not recover the funds it had erroneously paid to the former employee's wife or return those funds to Ideal Truck Service.
On January 12, 2006, DHR filed a motion requesting the trial court to vacate its December 15, 2005, order. In its motion, DHR argued that, because DHR is ultimately responsible for the operation of the payment center, the sovereign-immunity provision in Article I, § 14, Const. of Ala. 1901, as construed by this Court, divested the trial court of jurisdiction to order the payment center to recover the misapplied funds and credit the correct account.
The trial court denied DHR's post-judgment motion, and DHR appealed. The Court of Civil Appeals affirmed the trial court's order. DHR filed a petition for a writ of certiorari in this Court, seeking review of the Court of Civil Appeals' decision, and we granted the petition.
 Standard of Review
"`[I]f an action is an action against the State within the meaning of § 14, [Const. of Ala.1901,] such a case "presents a question of subject-matter jurisdiction, which cannot be waived or conferred by consent."'" Ex parteDavis, 930 So.2d 497, 499-500 (Ala. 2005) (quotingHaley v. Barbour County, 885 So.2d 783, 788
(Ala. 2004), quoting in turn Patterson v. GladwinCorp., 835 So.2d 137, 142-43 (Ala. 2002)). On questions of subject-matter jurisdiction, this Court is not limited by the *Page 895 
parties' arguments or by the legal conclusions of the trial and intermediate appellate courts regarding the existence of jurisdiction. Rather, we are obligated to dismiss an appeal if, for any reason, jurisdiction does not exist. See Ex parteSmith, 438 So.2d 766, 768 (Ala. 1983) ("Lack of subject-matter jurisdiction may not be waived by the parties and it is the duty of an appellate court to consider lack of subject-matter jurisdiction ex mero motu." (citingCity of Huntsville v. Miller, 271 Ala. 687, 688,127 So.2d 606, 608 (1958))).
 Analysis
The relief sought by Ideal Truck Service against the payment center — an order compelling the payment center to take action to correct the erroneous deposit of the child-support money from the father's paycheck into the wrong account — is in the nature of an injunction against the payment center.Cf. Dawkins v. Walker, 794 So.2d 333, 335 (Ala. 2001) ("An injunction is defined as `[a] court order commanding or preventing an action.' Black's Law Dictionary 788 (7th ed. 1999). Because the order at issue in this case directs the [defendant] to take action . . . we conclude that the order . . . was injunctive in nature."). Therefore, will evaluate the relief Ideal Truck Service seeks as injunctive relief for purposes of our sovereign-immunity analysis.
Article I, § 14, Const. of Ala. 1901, provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." Section 14 affords absolute immunity to both the State and State agencies. Alabama Dep't of Transp. v.Harbert Int'l, Inc., 990 So.2d 831, 839 (Ala. 2008) (noting that it `"is now well established'" that "`absoluteimmunity . . . extends to the State and to State agencies'" (quoting Raley v. Main, 987 So.2d 569, 583
(Ala. 2007) (Murdock, J., concurring in part and concurring in the result))); Ex parte Town of Lowndesboro,950 So.2d 1203, 1206 (Ala. 2006) (citing Lyons v. River Road Constr.,Inc., 858 So.2d 257, 261 (Ala. 2003)) ("When an action is one against the State or a State agency, § 14 wholly removes subject-matter jurisdiction from the courts."). "This absolute immunity from suit also bars suits for relief by way of mandamus or injunction." Ex parte Alabama Dep't ofTransp., 978 So.2d 17, 22 (Ala. 2007) (citing Ex parteTroy Univ., 961 So.2d 105, 110 (Ala. 2006)). The wall of absolute immunity created by § 14 for protecting the State and its agencies from liability is "nearly impregnable." Exparte Davis, 930 So.2d 497, 500 (Ala. 2005). We have long held, however, that an action for an order or injunction compelling a State official, in his or her official capacity, to perform his or her legal duties is not an action against the State within the meaning of § 14 and, therefore, is not prohibited by § 14. See Ex parteCarter, 395 So.2d 65, 68 (Ala. 1980); see alsoHarbert, 990 So.2d at 847.
The Court of Civil Appeals here held that DHR has a legal duty to recover child support the payment center distributes to the wrong recipient; thus, according to the Court of Civil Appeals, Ideal Truck Service's request for relief was not prohibited by § 14 because the request sought to compel DHR to perform its legal duty. In so holding, the Court of Civil Appeals quoted the following language from our opinion in State HighwayDepartment v. Milton Construction Co., 586 So.2d 872, 875
(Ala. 1991):
 "`It is true that § 14 of the Constitution prevents a suit against the state as well as suits against its agencies. However, this Court has also recognized that there are certain established exceptions to the protection afforded the state or its agencies by sovereign immunity. Among those recognized are actions *Page 896 brought to force state employees or agencies to perform their legal duties.'"
586 So.2d at 875 (emphasis added).
DHR argues that the Court of Civil Appeals erred in relying on the abovequoted language from Milton to conclude that an action against a State agency to compel the agency to perform a legal duty is not barred by the doctrine of sovereign immunity. Section 14 prohibits actions against the State, including actions seeking relief from State agencies. SeeLowndesboro, 950 So.2d at 1206.
 "In Ex parte Alabama Department of Transportation, 978 So.2d [17,] at 22 [(Ala. 2007)[1]], this Court clarified the reason for the trial court's subject-matter jurisdiction in [Milton]. The trial court had subject-matter jurisdiction in [Milton], not because the State Highway Department was a defendant, but because the director of the State Highway Department, in his official capacity, was a defendant, and the action sought to require the director to perform his legal duties and to pay for the services rendered pursuant to the contract."
Ex parte Alabama Dep't of Transp., 978 So.2d 718, 722
(Ala. 2007). The Court of Civil Appeals erred insofar as it held that an action against a State agency, such as DHR, to compel the agency to perform its legal duties is not barred by the doctrine of sovereign immunity.
We next consider whether Ideal Truck Service's motion for an order compelling the payment center to credit the amount of the child support withheld from the father's paycheck to the correct account and to remove any interest charges attributed to the father on any "delinquency" in his payments caused by the misidentification of the account on the check amounts to an action against a State agency that is prohibited by § 14. We note that the record contains no indication that, in its arguments before the trial court and the Court of Civil Appeals, [2] Ideal Truck Service offered any basis in law or fact for the conclusion that the relief it seeks against the payment center falls within the well-recognized exception to § 14 that permits actions against State officials to compel them to perform their legal duties. Neither has Ideal Truck Service offered any arguments or support for the conclusion that precedent prohibiting actions naming State agencies as defendants should be overruled or modified in any way. "Even if we would be amenable to such a request [that we overrule a line of authority], we are not inclined to abandon precedent without a specific invitation to do so." Clay Kilgore Constr., Inc.v. Buchalter/Grant, L.L.C., 949 So.2d 893, 898 (Ala. 2006). "Stare decisis commands, at a minimum, a degree of respect from this Court that makes it disinclined to overrule controlling precedent when it is not invited to do so." Moore v.Prudential Residential Servs. Ltd. P'ship, 849 So.2d 914,926 (Ala. 2002).
The use of the word "State" in § 14 protects only "immediate and strictly governmental agencies of the State" from suit. Rodgers v. Hopper, 768 So.2d 963, 966
(Ala. 2000). In determining whether a legislatively created body is "`an immediate and strictly governmental agency' and thus entitled to protection from suit under § 14," this Court considers "several factors . . . including . . . `(1) the character of the *Page 897 
power delegated to the body; (2) the relation of the body to the State; and (3) the nature of the function performed by the body.'" Ex parte Troy Univ., 961 *So.2d at 109-10 (quoting Rodgers, 768 So.2d at 966 (citing ArmoryComm'n v. Staudt, 388 So.2d 991, 993 (Ala. 1980))). We hold that the same factors ("the Staudt factors") are informative in determining whether an entity established by a State agency at the direction of the legislature is part of that agency for purposes of sovereign immunity.
Title IV-D of the Social Security Act requires that
 "the State agency must establish and operate a unit (which shall be known as the `State disbursement unit') for the collection and disbursement of payments under support orders. . . ."
42 U.S.C. 654b(a)(1).
In accordance with the Congressional directives contained in42 U.S.C. § 654b(a)(1), § 30-3-195, Ala. Code 1975, requires DHR, as the State Title IV-D agency, to "establish and operate a unit, which shall be known as the State Disbursement Unit, for the collection and disbursement of payments made under support orders. . . ." Section 30-3-195 further states that the "accurate identification of payments received" and the "prompt disbursement of the custodial parent's share of any payment" are the duties of the "State Disbursement Unit," i.e., the payment center. Ala. Code 1975, § 30-3-195(c)(2) and (3). Section 30-3-195 expressly places on DHR the responsibility for operating the "State Disbursement Unit," either "directly" or by a "contractor responsible directly to" DHR. § 30-3-195(b). In accordance with 42 U.S.C. § 654b
and Ala. Code 1975, § 30-3-195, DHR established the payment center; it operates the payment center through its agent, Tier Technologies.
In considering the character of the power delegated to, and the nature of the function performed by, the payment center, it is apparent, in light of the above statutes, that the powers, duties, and functions conferred on the payment center are powers, duties, and functions legislatively delegated to DHR in conjunction with DHR's role as the State agency charged with carrying out the provisions of Title IV-D of the Social Security Act. See 42 U.S.C. § 654b; Ala. Code 1975, § 30-3-195. Thus, the first and third Staudt
factors — "`the character of the power delegated to the body'" and "`the nature of the function performed by the body'" — support the conclusion that the payment center is a unit of DHR for purposes of sovereign immunity. See TroyUniv., 961 So.2d at 109-10. In considering the relation of the payment center to the State agency, we note that DHR established the payment center and that it is directly and ultimately responsible for the payment center's operations, Ala. Code 1975, § 30-3-195(b). Therefore, the secondStaudt factor — "`the relation of the body to the State'" — also supports the conclusion that the payment center is part of DHR and shares DHR's immunity.See Troy Univ., 961 So.2d at 109. Accordingly, we must conclude that an injunction against the payment center[3] is an injunction against DHR itself, and, therefore, § 14 prohibits such an injunction.
DHR further argues that the payment center is not responsible to recoup child-support funds that the payment center distributes to the wrong person as a result of a third party's error. Thus, according to DHR, the Court of Civil Appeals erred *Page 898 
in holding that DHR is legally obligated to recoup from the former employee's ex-wife the child-support funds the payment center erroneously deposited in her account. Because sovereign immunity precludes subject-matter jurisdiction in this case, we are without jurisdiction to consider whether or to what extent DHR or the payment center is obligated to recoup incorrectly disbursed child-support funds. Thus, although we hold that subject-matter jurisdiction is lacking as the case is presently stated, we express no opinion as to whether Ideal Truck Service could have obtained relief from a State official pursuant to our well-recognized authority that a State official may, in his or her official capacity, be subject to an action to compel him or her to perform his or her legal duties.
Because sovereign immunity precludes a civil action against the payment center, the trial court did not have jurisdiction to entertain Ideal Truck Service's request for injunctive relief against the payment center, and the trial court's order granting such injunctive relief is void. Gulf Beach Hotel,Inc. v. State ex rel. Whetstone, 935 So.2d 1177, 1182
(Ala. 2006) ("Where `the trial court ha[s] no subject-matter jurisdiction, [it has] no alternative but to dismiss the action.' ` "Any other action taken by a court lacking subject matter jurisdiction is null and void."'" (quoting State v.Property at 2018 Rainbow Drive, 740 So.2d 1025, 1029
(Ala. 1999) (citations omitted))). Our remedy in such a situation, when we find no subject-matter jurisdiction in the trial court, is to dismiss the appeal and vacate the trial court's judgment. Therefore, we vacate the trial court's order granting Ideal Truck Service relief against the payment center, and we dismiss this appeal. See Alabama Dep't of Revenue v.Arnold, 909 So.2d 192, 193 (Ala. 2005) (citing Dunningv. New England Life Ins. Co., 890 So.2d 92, 98 (Ala. 2003)).
JUDGMENT VACATED; APPEAL DISMISSED.
SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
[1] The Court of Civil Appeals issued its opinion in this case relying on Milton before we issued our opinion clarifying Milton. However, as we explained in Exparte Alabama Department of Transportation,978 So.2d at 22, Milton did not change the law that § 14 prohibits actions against State agencies.
[2] On March 3, 2008, this Court entered an order striking Ideal Truck Service's responsive brief in this appeal as untimely filed.
[3] We note that Ideal Truck Service did not in its motion request the trial court to enter any order directed to Tier Technologies. We express no opinion as to the application of sovereign-immunity principles to Tier Technologies.