IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-36

 No. COA19-1015

 Filed 2 March 2021

 Cumberland County, No. 18 CVS 5146

 SHARELL FARMER, Plaintiff,

 v.

 TROY UNIVERSITY, PAMELA GAINEY, AND KAREN TILLERY, Defendants.

 Appeal by plaintiff from order entered 1 July 2019 by Judge Andrew T. Heath

 in Cumberland County Superior Court. Heard in the Court of Appeals 20 October

 2020.

 Kennedy, Kennedy, Kennedy and Kennedy, LLP, by Harvey L. Kennedy and
 Harold L. Kennedy, III, for plaintiff-appellant.

 Ford & Harrison LLP, by Julie K. Adams, and Wesley C. Redmond, pro hac
 vice, for defendants-appellees.

 ZACHARY, Judge.

¶1 Plaintiff Sharell Farmer appeals from an order granting Defendants’ motion

 to dismiss pursuant to Rules 12(b)(2) and (6) of the North Carolina Rules of Civil

 Procedure, on the grounds of interstate sovereign immunity. After careful review, we

 affirm the trial court’s order.

 Background

¶2 From May 2014 until 9 September 2015, Plaintiff was employed as a college
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 recruiter for Defendant Troy University. Troy University is a public university,

 incorporated and primarily located in the State of Alabama. However, Troy

 University has a recruiting office in Fayetteville, North Carolina, out of which

 Plaintiff was based, and where Plaintiff worked with Defendants Pamela Gainey and

 Karen Tillery (the “individual Defendants”).

¶3 Plaintiff alleges that, while he was employed by Troy University, the

 individual Defendants committed several acts of “sexual harassment and fraudulent

 conduct” against him, and that such conduct began “his first day on the job” and

 continued “throughout his employment,” with the individual Defendants making

 “frequent sexually suggestive remarks to” him. Plaintiff reported the individual

 Defendants’ actions to “the appropriate officials” at Troy University, but following his

 complaint, Defendant Gainey “immediately retaliated” and suspended him from work

 for two days for poor performance. On 9 September 2015, Defendant Gainey

 terminated Plaintiff’s employment with Troy University.

¶4 On 24 July 2018, Plaintiff filed suit against Troy University and the individual

 Defendants. Plaintiff asserted claims against Troy University for (1) wrongful

 discharge from employment, in violation of public policy; and (2) negligent retention

 and/or supervision of an employee. Plaintiff asserted claims against all Defendants

 for (1) intentional infliction of mental and emotional distress; and (2) tortious

 interference with contractual rights. In the event that the trial court determined that
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 his claims were barred by the doctrine of sovereign immunity, Plaintiff also asserted

 an alternative claim against all Defendants, alleging a violation of his rights under

 the North Carolina Constitution.

¶5 On 3 October 2018, Defendants filed a motion to dismiss pursuant to Rule

 12(b)(6) for failure to state a claim, which the trial court denied by order entered on

 9 November 2018. On 6 December 2018, Defendants filed their answer to Plaintiff’s

 complaint, generally denying Plaintiff’s claims and asserting several defenses,

 including the defense of sovereign immunity.

¶6 On 13 May 2019, the Supreme Court of the United States filed its opinion in

 Franchise Tax Board of California v. Hyatt (“Hyatt III”), holding that “States retain

 their sovereign immunity from private suits brought in the courts of other States.”

 ___ U.S. ___, ___, 203 L. Ed. 2d 768, 774 (2019). On 15 May 2019, citing Hyatt III,

 Defendants filed another motion to dismiss on the grounds of interstate sovereign

 immunity, pursuant to Rules 12(b)(2) (lack of personal jurisdiction) and (6) (failure to

 state a claim). In the alternative, Defendants moved for judgment on the pleadings,

 pursuant to Rule 12(c). On 24 May 2019, Defendants filed an amended motion to

 dismiss, or in the alternative, for judgment on the pleadings. On 3 June 2019,

 Plaintiff filed his response.

¶7 On 1 July 2019, the trial court entered its order granting Defendants’ motion

 to dismiss pursuant to Rules 12(b)(2) and (6), citing Hyatt III in support of its ruling.
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 Plaintiff timely filed his notice of appeal.

 Discussion

¶8 Plaintiff asserts that the trial court erred in granting Defendants’ motion to

 dismiss. Specifically, Plaintiff argues that (1) the doctrine of interstate sovereign

 immunity does not apply in this case; (2) Defendants waived sovereign immunity

 when Troy University registered in North Carolina as a nonprofit corporation; (3)

 Hyatt III must be construed prospectively, not retroactively; (4) Plaintiff’s claim

 under the North Carolina Constitution survives, regardless of whether Defendants’

 sovereign immunity defense succeeds; and (5) the trial court committed reversible

 error in dismissing the individual Defendants from the lawsuit. After careful review,

 we affirm the trial court’s order.

 I. Standard of Review

¶9 When a trial court grants a motion to dismiss for lack of personal jurisdiction

 under Rule 12(b)(2), we must review the record to determine whether there is

 evidence that would support the trial court’s determination that exercising its

 jurisdiction would be inappropriate. See Martinez v. Univ. of N.C., 223 N.C. App. 428,

 430, 741 S.E.2d 330, 332 (2012).

¶ 10 On appeal from a trial court’s order on a motion to dismiss for failure to state

 a claim pursuant to Rule 12(b)(6), this Court conducts de novo review to determine

 “whether, as a matter of law, the allegations of the complaint . . . are sufficient to
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 state a claim upon which relief may be granted.” Green v. Kearney, 203 N.C. App. 260,

 266, 690 S.E.2d 755, 761 (2010) (citation and internal quotation marks omitted).

 II. Sovereign Immunity

¶ 11 Plaintiff first argues that Defendants cannot avail themselves of the doctrine

 of interstate sovereign immunity, in that the Supreme Court’s holding in Hyatt III is

 inapplicable to the present case. We begin with a brief overview of Hyatt III.

 A. Hyatt III

¶ 12 Hyatt claimed to have moved from California to Nevada, a state that “collects

 no personal income tax,” after obtaining a patent that Hyatt anticipated would yield

 him millions of dollars in royalties. Hyatt III, ___ U.S. at ___, 203 L. Ed. 2d at 772.

 However, the “Franchise Tax Board of California (Board), the state agency

 responsible for assessing personal income tax, suspected that Hyatt’s move was a

 sham,” and it accused Hyatt of misrepresenting his residency in order to avoid paying

 income taxes in California. Id. The Board audited Hyatt, who later “sued the Board

 in Nevada state court for torts he alleged the agency committed during the audit.” Id.

 at ___, 203 L. Ed. 2d at 773. The Board invoked the State of California’s sovereign

 immunity as a defense. Id.

¶ 13 Applying Nevada immunity law, “[t]he Nevada Supreme Court rejected [the

 Board’s sovereign immunity] argument and held that, under general principles of

 comity, the Board was entitled to the same immunity that Nevada law afforded
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 Nevada agencies[.]” Id. And pursuant to then-existing Supreme Court precedent,

 “each State [was permitted] to decide whether to grant or deny its sister States

 sovereign immunity” as a matter of comity. Id. at ___, 203 L. Ed. 2d at 783 (Breyer,

 J., dissenting) (citing Nevada v. Hall, 440 U.S. 410, 59 L. Ed. 2d 416 (1979)).

¶ 14 In Hyatt III, however, the United States Supreme Court explicitly overruled

 Hall, holding that “States retain their sovereign immunity from private suits brought

 in the courts of other States.” Id. at ___, 203 L. Ed. 2d at 774 (majority opinion). “The

 Constitution does not merely allow States to afford each other immunity as a matter

 of comity; it embeds interstate sovereign immunity within the constitutional design.”

 Id. at ___, 203 L. Ed. 2d at 780.

 B. Application

¶ 15 Plaintiff first attempts to distinguish the facts of the instant case from the facts

 of Hyatt III, in the hopes of defeating the application of interstate sovereign

 immunity. Plaintiff argues that in Hyatt III, “the legal dispute had its genesis in the

 State of California. The state taxes owed to California were based on business

 activities that occurred within the [S]tate of California. The [S]tate of California was

 involved solely in governmental activity, i.e., collecting state taxes.” By contrast,

 Plaintiff asserts that here, “all the tortious conduct occurred within the sovereign

 boundaries of North Carolina. The individual tort feasors [sic] were residents in

 North Carolina.” This argument is without merit.
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

¶ 16 It is evident that for purposes of interstate sovereign immunity, the state in

 which the allegedly tortious conduct was committed is not a distinguishing fact of any

 relevance; the dispositive issue is whether one state has been “haled involuntarily”

 into the courts of another state. Id. at ___, 203 L. Ed. 2d at 776. The approach to

 interstate sovereign immunity laid out in Hyatt III is “absolute.” Id. at ___, 203 L. Ed.

 2d at 783 (Breyer, J., dissenting). Regardless, in both the present case and in Hyatt

 III, the tortious conduct occurred in the state in which the plaintiff filed suit. Here,

 Plaintiff alleges that he was injured by Defendants in North Carolina, where he filed

 suit; in Hyatt III, “[t]he Franchise Tax Board sent its California employees into the

 state of Nevada[,]” where the employees allegedly committed the torts for which

 Hyatt sought compensation in the Nevada courts. Id. at ___, 203 L. Ed. 2d at 772–73

 (majority opinion). Thus, Plaintiff’s first argument is inapt.

¶ 17 Plaintiff further contends that allowing the doctrine of sovereign immunity to

 bar his suit against Defendants erroneously extends the scope of the Alabama

 Constitution to embrace illegal conduct by North Carolina residents in North

 Carolina, rather than properly limiting the Alabama Constitution’s application to

 “conduct within the sovereign boundaries of Alabama.” Plaintiff then proclaims that

 [t]he sovereignty of North Carolina controls conduct within
 this state. . . . The sovereignty of North Carolina is
 sacrosanct. It is absolute. For this Court to apply Alabama
 sovereign immunity under Article I, § 14 of the Alabama
 Constitution to conduct which occurred exclusively within
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 the sovereign boundaries of North Carolina would
 constitute an intrusion on the sovereignty of this State.

¶ 18 However, the United States Supreme Court succinctly foreclosed this

 argument in Hyatt III:

 The problem with [Plaintiff’s] argument is that the
 Constitution affirmatively altered the relationships
 between the States, so that they no longer relate to each
 other solely as foreign sovereigns. Each State’s equal
 dignity and sovereignty under the Constitution implies
 certain constitutional limitations on the sovereignty of all
 of its sister States. One such limitation is the inability of
 one State to hale another into its courts without the latter’s
 consent.

 Id. at ___, 203 L. Ed. 2d at 779–80 (citation and internal quotation marks omitted).

 Under Hyatt III, it is clear that the “intrusion”—if any—upon the sovereignty of

 North Carolina occurred upon the ratification of the United States Constitution, and

 not upon the trial court’s dismissal of Plaintiff’s claims on the grounds of interstate

 sovereign immunity.

¶ 19 Plaintiff next argues that the doctrine of interstate sovereign immunity does

 not apply in this instance because Troy University was not exercising a governmental

 function, but rather “came into North Carolina and leased office space in Fayetteville

 for a business and commercial venture.” (Emphasis added). This argument is

 similarly unavailing.

¶ 20 To begin, Alabama courts consider the State’s universities, including Troy
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 University, to be arms of the State of Alabama entitled to the sovereign immunity

 enjoyed by the State. See, e.g., Ex parte Troy Univ., 961 So. 2d 105, 109–10 (Ala. 2006);

 Stark v. Troy State Univ., 514 So. 2d 46, 50 (Ala. 1987). Like North Carolina, Alabama

 does not recognize a “business and commercial ventures” exception to its sovereign

 immunity. Ex parte Troy Univ., 961 So. 2d at 109–10.

¶ 21 In addition, although the Hyatt III Court did not address the governmental

 and proprietary function distinction, the United States Supreme Court has previously

 made clear that a state’s waiver of its sovereign immunity must be explicit; as will be

 more thoroughly explained below, states cannot implicitly waive sovereign immunity.

 See Sossamon v. Texas, 563 U.S. 277, 284, 179 L. Ed. 2d 700, 709 (2011); Coll. Sav.

 Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 682, 144 L. Ed.

 2d 605, 620 (1999).

¶ 22 Finally, we note that in advancing this argument, Plaintiff conflates our

 jurisprudence regarding the doctrines of sovereign immunity and governmental

 immunity.

 Under the doctrine of sovereign immunity, the State is
 immune from suit absent waiver of immunity. Under the
 doctrine of governmental immunity, a county is immune
 from suit for the negligence of its employees in the exercise
 of governmental functions absent waiver of immunity.
 These immunities do not apply uniformly. The State’s
 sovereign immunity applies to both its governmental and
 proprietary functions, while the more limited governmental
 immunity covers only the acts of a municipality or a
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 municipal corporation committed pursuant to its
 governmental functions.

 Evans v. Hous. Auth., 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004) (emphasis added)

 (citation and internal quotation marks omitted).

¶ 23 As an arm of the State of Alabama,1 Troy University is immune from suit under

 the doctrine of sovereign immunity, not governmental immunity. This immunity

 applies to both its proprietary and governmental functions, see id., unless that

 immunity is explicitly waived, see Sossamon, 563 U.S. at 284, 179 L. Ed. 2d at 709.

¶ 24 Accordingly, Plaintiff’s argument that interstate sovereign immunity does not

 apply in this case lacks merit. Having so concluded, we address Plaintiff’s argument

 that Troy University waived sovereign immunity.

 III. Waiver of Sovereign Immunity

¶ 25 Plaintiff next argues that the trial court erred in granting Defendants’ motion

 to dismiss because Troy University waived its sovereign immunity by registering with

 the North Carolina Secretary of State as a nonprofit corporation, thus enabling it to

 sue and be sued in its corporate name. We disagree.

¶ 26 As an Alabama nonprofit corporation, Troy University applied for and received

 a certificate of authority to conduct its affairs in North Carolina as a foreign nonprofit

 corporation, pursuant to Article 15 of the Nonprofit Corporation Act. See N.C. Gen.

 1 See Ala. Code § 16-56-1 (2018).
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 Stat. § 55A-15-03 (2019). The Nonprofit Corporation Act states, in pertinent part:

 (a) Unless its articles of incorporation or this Chapter
 provides otherwise, every corporation has perpetual
 duration and succession in its corporate name and has
 the same powers as an individual to do all things
 necessary or convenient to carry out its affairs,
 including without limitation, power:

 (1) To sue and be sued, complain and defend in its
 corporate name[.]

 Id. § 55A-3-02(a)(1) (emphasis added).2

¶ 27 The United States Supreme Court has held that a state’s waiver of its

 sovereign immunity cannot be implied; it must be explicitly expressed. Sossamon,

 563 U.S. at 284, 179 L. Ed. 2d at 708–09. “Courts indulge every reasonable

 presumption against waiver of fundamental constitutional rights.” Coll. Sav. Bank,

 527 U.S. at 682, 144 L. Ed. 2d at 620 (citation and internal quotation marks omitted).

¶ 28 The Hyatt III Court held that one state may not be “haled involuntarily” into

 the courts of a sister state without its consent. See ___ U.S. at ___, 203 L. Ed. 2d at

 2 Article 15 of the Nonprofit Corporation Act further states:

 Except as otherwise provided by this Chapter, a foreign
 corporation with a valid certificate of authority has the same but
 no greater rights and has the same but no greater privileges as,
 and is subject to the same duties, restrictions, penalties, and
 liabilities now or later imposed on, a domestic corporation of like
 character.

 N.C. Gen. Stat. § 55A-15-05(b).
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 780. Here, Alabama has explicitly not consented to be sued:

 The wall of immunity erected by [Ala. Const. 1901] § 14 is
 nearly impregnable. This immunity may not be waived.
 This means not only that the state itself may not be sued,
 but that this cannot be indirectly accomplished by suing its
 officers or agents in their official capacity, when a result
 favorable to plaintiff would be directly to affect the
 financial status of the state treasury.

 Patterson v. Gladwin Corp., 835 So. 2d 137, 142 (Ala. 2002) (citations omitted).

¶ 29 Our Supreme Court has similarly held that “[w]aiver of sovereign immunity

 may not be lightly inferred and State statutes waiving this immunity, being in

 derogation of the sovereign right to immunity, must be strictly construed.” Guthrie v.

 N.C. State Ports Auth., 307 N.C. 522, 537–38, 299 S.E.2d 618, 627 (1983). “Statutory

 authority to ‘sue or be sued’ is not always construed as an express waiver of sovereign

 immunity and is not dispositive of the immunity defense when suit is brought against

 an agency of the State.” Id. at 538, 299 S.E.2d at 627.

¶ 30 In Guthrie, our Supreme Court determined that an enabling statute that “vests

 the Ports Authority with the authority to ‘sue or be sued,’ ” when read together with

 the provisions of the State Torts Claims Act, N.C. Gen. Stat. § 143-291 et seq., did not

 constitute “consent for the Ports Authority to be sued in the courts of the State[,]”

 Guthrie, 307 N.C. at 538, 299 S.E.2d at 627. Rather, the Court concluded that the

 statutes evince “a legislative intent that the Authority be authorized to sue as [a]

 plaintiff in its own name in the courts of the State but contemplates that all tort
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 claims against the Authority for money damages will be pursued under the State Tort

 Claims Act.” Id.

¶ 31 Plaintiff’s argument in the case at bar is no more successful than that

 considered and rejected by our Supreme Court in Guthrie. Assertions of statutory

 waivers of state sovereign immunity are subject to strict construction. Id. at 537–38,

 299 S.E.2d at 627. Unlike Guthrie, which concerned a suit against an agency of the

 State of North Carolina upon which the enabling legislation explicitly bestowed the

 authority to “sue or be sued,” id., Plaintiff here has not shown any similarly explicit

 waiver of state sovereign immunity, either in the Alabama statutes authorizing Troy

 University’s activities or in our General Statutes.

¶ 32 In that interstate sovereign immunity is a fundamental right “embed[ded] . . .

 within the constitutional design,” Hyatt III, ___ U.S. at ___, 203 L. Ed. 2d at 780, we

 must “indulge every reasonable presumption against [its] waiver,” Coll. Sav. Bank,

 527 U.S. at 682, 144 L. Ed. 2d at 620. Accordingly, we will not read into the Nonprofit

 Corporation Act a blanket waiver of interstate sovereign immunity for an arm of

 another state that registers as a nonprofit corporation in the State of North Carolina,

 absent clear and express statutory authority to do so.

¶ 33 Troy University has not waived its interstate sovereign immunity by

 registering with the North Carolina Secretary of State as a nonprofit corporation. We

 therefore proceed to Plaintiff’s next issue presented: whether the Supreme Court’s
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 decision in Hyatt III may be applied retroactively.

 IV. Retroactive Application of Hyatt III

¶ 34 Plaintiff next asserts that Hyatt III “must be construed prospectively such that

 it only applies to causes of action that accrue after May 13, 2019, the date of the

 Supreme Court Opinion,” and consequently, the decision cannot affect his case,

 because his “legal rights vested on September 9, 2015,” the date Defendant Gainey

 terminated Plaintiff’s employment with Troy University. We disagree.

¶ 35 To support this contention, Plaintiff cites the landmark case of Smith v. State,

 in which our Supreme Court held that when the State enters into a valid contract, it

 implicitly waives its sovereign immunity with regard to claims for breach of that

 contract. 289 N.C. 303, 320, 222 S.E.2d 412, 424 (1976). In Smith, the Court also

 denied retroactive application of its holding, stating that “in this case, and in causes

 of action on contract arising after the filing date of this opinion, . . . the doctrine of

 sovereign immunity will not be a defense to the State.” Id.

¶ 36 Our Supreme Court’s decision in Smith is clearly distinguishable from Hyatt

 III and the case before us. Smith addressed the sovereign immunity of the State of

 North Carolina, in its own courts, from suits arising out of contracts into which the

 State entered voluntarily. See id. at 309–11, 222 S.E.2d at 417–18. Interpreting such

 questions of intrastate sovereign immunity is a matter of state law. See id. at 313–

 20, 222 S.E.2d at 419–23.
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

¶ 37 Conversely, Hyatt III concerns the federal constitutional implications of

 interstate sovereign immunity, in which one state is haled into the courts of another

 state without its consent. ___ U.S. at ___, 203 L. Ed. 2d at 774. As the Supreme Court

 explained, “although the [federal] Constitution assumes that the States retain their

 sovereign immunity except as otherwise provided, it also fundamentally adjusts the

 States’ relationship with each other and curtails their ability, as sovereigns, to decline

 to recognize each other’s immunity.” Id. at ___, 203 L. Ed. 2d at 775. Stated another

 way, “[i]nterstate immunity . . . is implied as an essential component of federalism.”

 Id. at ___, 203 L. Ed. 2d at 781 (citation and internal quotation marks omitted).

 Accordingly, in that Smith addressed intrastate sovereign immunity—a matter of

 state law—and not interstate sovereign immunity with its attendant federal

 constitutional concerns, Smith is not persuasive on the issue of whether Hyatt III

 applies retroactively, or merely prospectively, as Plaintiff contends.

¶ 38 Furthermore, Smith stands as a clear exception to our appellate courts’

 traditional adherence to the “Blackstonian Doctrine”:

 Under a long-established North Carolina law, a decision of
 a court of supreme jurisdiction overruling a former decision
 is, as a general rule, retrospective in its operation. This
 rule is based on the so-called “Blackstonian Doctrine” of
 judicial decision-making: courts merely discover and
 announce law; they do not create it; and the act of
 overruling is a confession that the prior ruling was
 erroneous and was never the law.
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 Cox v. Haworth, 304 N.C. 571, 573, 284 S.E.2d 322, 324 (1981) (citations omitted).

 The presumption of retrospectivity “is one of judicial policy, and should be determined

 by a consideration of such factors as reliance on the prior decision, the degree to which

 the purpose behind the new decision can be achieved solely through prospective

 application, and the effect of retroactive application on the administration of justice.”

 Id.

¶ 39 Hyatt III appears to portend its own retroactive application. In considering the

 effect of overruling Nevada v. Hall, the Supreme Court “acknowledge[d] that some

 plaintiffs, such as Hyatt,” had demonstrated reliance upon Hall “by suing sovereign

 States.” Hyatt III, ___ U.S. at ___, 203 L. Ed. 2d at 782. Yet, despite this recognition,

 the Court noted the unfortunate reality that “in virtually every case that overrules a

 controlling precedent, the party relying on that precedent will incur the loss of

 litigation expenses and a favorable decision below.” Id. “Those case-specific costs are

 not among the reliance interests that would persuade . . . an incorrect resolution of

 an important constitutional question.” Id.

¶ 40 Moreover, the Court was quite clear that its prior holding in Hall was

 “irreconcilable with our constitutional structure and with the historical evidence

 showing a widespread preratification understanding that States retained immunity

 from private suits, both in their own courts and in other courts.” Id.

¶ 41 After careful consideration of the Supreme Court’s opinion in Hyatt III, and in
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 light of our courts’ presumption that the decision of a higher court generally operates

 retroactively, Cox, 304 N.C. at 573, 284 S.E.2d at 324, we conclude that retroactive

 application of Hyatt III is required to achieve the purpose of the Court’s holding. In

 so concluding, this Court simply recognizes the interstate sovereign immunity—an

 implicit and “essential component of federalism[,]” Hyatt III, ___ U.S. at ___, 203 L.

 Ed. 2d at 781—which the State of Alabama never waived.

¶ 42 We find additional support for our conclusion in the opinions of other states

 that have already decided this issue. “In the absence of persuasive and binding North

 Carolina cases, we examine the law of other states.” Russell v. Donaldson, 222 N.C.

 App. 702, 706, 731 S.E.2d 535, 538 (2012).

¶ 43 Several other states have applied Hyatt III retroactively. The Supreme Court

 of Kentucky applied Hyatt III retroactively, reversing the denial of the State of Ohio’s

 motion to dismiss claims against it in a lawsuit filed in Kentucky before Hyatt III was

 decided. Ohio v. Great Lakes Minerals, LLC, 597 S.W.3d 169, 171–73 (Ky. 2019), cert.

 denied, ___ U.S. ___, 208 L. Ed. 2d 87 (2020). The Appellate Court of Connecticut

 similarly applied Hyatt III retroactively, affirming the dismissal of a suit filed in 2018

 by one of its citizens against the State of Rhode Island, one of its agencies, and several

 of its agents. Reale v. State, 218 A.3d 723, 726–27 (Conn. App. Ct. 2019). And the

 Supreme Court of New York, Appellate Division, applied Hyatt III retroactively in

 affirming a New York trial court’s pre-Hyatt III grants of motions to dismiss made by
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 an agency of the State of Arizona and one of its employees. Trepel v. Hodgins, 121

 N.Y.S.3d 605, 606 (N.Y. App. Div. 2020).

¶ 44 Recognizing that “sovereign immunity is a jurisdictional issue[,]” M Series

 Rebuild, LLC v. Town of Mount Pleasant, N.C., 222 N.C. App. 59, 62, 730 S.E.2d 254,

 257, disc. review denied, 366 N.C. 413, 735 S.E.2d 190 (2012), and consonant with

 Hyatt III’s analysis of interstate sovereign immunity as a “fundamental aspect” of

 each state’s sovereignty, ___ U.S. at ___, 203 L. Ed. 2d at 775, as well as our courts’

 presumption of retrospectivity, see Cox, 304 N.C. at 573, 284 S.E.2d at 324, we

 conclude that Hyatt III is appropriately applied retroactively, and that Plaintiff’s

 argument to the contrary must fail.

 V. North Carolina Constitutional Claim

¶ 45 Plaintiff also contends that the trial court erred in granting Defendants’

 motion to dismiss his claim under Article 1, Section 19 of the North Carolina

 Constitution alleging “a violation of equal protection of the law,” which he asserted

 in the event that the trial court determined that his other claims were barred by

 sovereign immunity. Citing our Supreme Court’s decision in Corum v. Univ. of N.C.,

 330 N.C. 761, 413 S.E.2d 276, cert. denied, 506 U.S. 985, 121 L. Ed. 2d 431 (1992),

 Plaintiff maintains that his “alternative state constitutional claim . . . trump[s] the

 doctrine of sovereign immunity.” We disagree.

¶ 46 It is well established that a plaintiff may not proceed with a claim directly
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 under the North Carolina Constitution when an adequate alternative remedy is

 available. Corum, 330 N.C. at 784, 413 S.E.2d at 291. In Corum, a North Carolina

 resident complaining of injury resulting from the actions of an arm of the State of

 North Carolina asserted a direct constitutional claim, which the State contended was

 barred by the doctrine of sovereign immunity. Id. at 766, 413 S.E.2d at 280. Our

 Supreme Court determined that “[t]he doctrine of sovereign immunity cannot stand

 as a barrier to North Carolina citizens who seek to remedy violations of their rights

 guaranteed by the Declaration of Rights” of our State Constitution. Id. at 785–86, 413

 S.E.2d at 291. “[W]hen there is a clash between these constitutional rights and

 sovereign immunity, the constitutional rights must prevail.” Id. at 786, 413 S.E.2d at

 292. Thus, “in the absence of an adequate state remedy, one whose state

 constitutional rights have been abridged has a direct claim against the State under

 [the North Carolina] Constitution.” Id. at 782, 413 S.E.2d at 289.

¶ 47 Nonetheless, Corum, like Smith discussed above, involved issues of intrastate

 sovereign immunity, and is therefore similarly inapplicable to the case at bar. Again,

 the instant case raises an issue of interstate sovereign immunity, in that Plaintiff has

 asserted claims against an arm of the State of Alabama and its agents, the individual

 Defendants. While the Declaration of Rights in the North Carolina Constitution may

 indeed trump our State’s intrastate sovereign immunity, in the interstate context, the

 federal Constitution protects the several states’ sovereign immunity vis-à-vis one
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 another; indeed, it is “embed[ded] . . . within the [federal] constitutional design.”

 Hyatt III, ___ U.S. at ___, 203 L. Ed. 2d at 780.

 Interstate sovereign immunity is . . . integral to the
 structure of the Constitution. Like a dispute over borders
 or water rights, a State’s assertion of compulsory judicial
 process over another State involves a direct conflict
 between sovereigns. The Constitution implicitly strips
 States of any power they once had to refuse each other
 sovereign immunity, just as it denies them the power to
 resolve border disputes by political means. Interstate
 immunity, in other words, is implied as an essential
 component of federalism.

 Id. at ___, 203 L. Ed. 2d at 781 (emphasis added) (citation and internal quotation

 marks omitted).

¶ 48 Accordingly, Plaintiff’s Corum claim is without merit. The trial court did not

 err in granting Defendants’ motion to dismiss this claim.

 VI. The Individual Defendants

¶ 49 Lastly, Plaintiff argues that the trial court committed reversible error by

 granting Defendants’ motion to dismiss with respect to the individual Defendants as

 well as Troy University. Two of Plaintiff’s assertions on this issue sound from his

 prior arguments: (1) that Troy University is not entitled to sovereign immunity, so

 “the individual Defendants, who are residents and citizens of North Carolina, cannot

 legitimately raise the issue of sovereign immunity”; and (2) the individual Defendants

 committed intentional torts as “employees of a non-profit corporation doing business
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

 in North Carolina” and “should be treated like any other employees of a non-profit

 corporation in this state.” These arguments lack merit.

¶ 50 “A suit against a public official in [her] official capacity is a suit against the

 State.” White v. Trew, 366 N.C. 360, 363, 736 S.E.2d 166, 168 (2013) (citation and

 internal quotation marks omitted). Our Supreme Court has held that “when the

 complaint does not specify the capacity in which a public official is being sued for

 actions taken in the course and scope of [her] employment, we will presume that the

 public official is being sued only in [her] official capacity.” Id. at 360–61, 736 S.E.2d

 at 167.

¶ 51 In his complaint, Plaintiff avers that the individual Defendants were “agent[s]

 and employee[s]” of Troy University. At no point in his complaint, however, does

 Plaintiff specify that he is suing either individual Defendant in her personal capacity.

 Accordingly, we must presume that he sued the individual Defendants in their official

 capacities. Id. As such, his claims against the individual Defendants are as much

 against the State of Alabama as are his claims against Troy University, see id. at 363,

 736 S.E.2d at 168, and his argument to the contrary is without merit. Thus, the

 individual Defendants are protected by the sovereign immunity afforded to Troy

 University, and the trial court did not err in dismissing Plaintiff’s claims against the

 individual Defendants.

 Conclusion
 FARMER V. TROY UNIV.

 2021-NCCOA-36

 Opinion of the Court

¶ 52 For the foregoing reasons, Plaintiff has not shown that the trial court erred in

 granting Defendants’ motion to dismiss. Accordingly, we affirm the trial court’s order.

 AFFIRMED.

 Judges MURPHY and COLLINS concur.